**U–ANCHOR ADVERTISING, INC., Petitioner,**

v.

**N. H. BURT, d/b/a Granot Lodge, Respondent.**

No. B–6516.

Supreme Court of Texas.

July 13, 1977.

Rehearing Denied July 27, 1977.

B. Hal Miner, Amarillo, for petitioner.

Kenneth A. Back, Amarillo, for respondent.

STEAKLEY, Justice.

This is a suit for breach of contract. It was instituted in the 47th District Court of Potter County, Texas by U-Anchor Advertising, Inc., Petitioner, against N. H. Burt, doing business as Granot Lodge, Respondent. U-Anchor is a Texas corporation domiciled in Amarillo, Potter County, Texas. Burt is a resident of Clinton, Custer County, Oklahoma. Citation was served upon the Secretary of State of Texas as the presumed agent of Burt for service of process pursuant to Article 2031b, Tex.Rev.Civ. Stat.Ann., the Texas "long-arm" statute. Burt entered a special appearance to contest the jurisdiction of the Texas court pursuant to Rule 120a of the Texas Rules of Civil Procedure. The trial court sustained Burt's Motion to the Jurisdiction, and this was affirmed by the Court of Civil Appeals. It was the view of the court that while Burt was unquestionably doing business in Texas within the terms of Article 2031b, his contacts with Texas fell short of the requirements of due process. 544 S.W.2d 500. We affirm the judgment of the Court of Civil Appeals.

Certain additional facts bearing upon the question of jurisdiction appear undisputed. The written contract upon which suit was brought was executed by the parties in Clinton, Oklahoma. It resulted from solicitation by a salesman for U-Anchor who signed the contract for U-Anchor. The contract called for U-Anchor to place five advertising displays for Burt at various Oklahoma highway locations for a period of 36 months. Burt agreed to pay U-Anchor $80 monthly at its office in Amarillo, Potter County, Texas. U-Anchor constructed the signs in Amarillo and erected them at the Oklahoma locations. Burt mailed six and perhaps seven monthly payment checks to U-Anchor at its office in Amarillo, but he had no other contacts with Texas.

The controlling provisions of Sections 3 and 4 of Article 2031b are as follows:

Sec. 3. *Any . . . non-resident natural person that engages in business in this State,* irrespective of any Statute or law respecting designation or maintenance of resident agents, and does not maintain a place of regular business in this State or a designated agent upon whom service may be made upon causes of action arising out of such business done in this State, the act or acts of engaging in such business within this State shall be deemed equivalent to an appointment by such . . . non-resident natural person of the Secretary of State of Texas as agent upon whom service of process may be made in any action, suit or proceedings arising out of such business done in this State, wherein such . . . non-resident natural person is a party or is to be made a party.

Sec. 4. For the purpose of this Act, *and without including other acts that may constitute doing business,* any . . non-resident natural person shall be deemed doing business in this State *by entering into contracts* by mail or otherwise *with a resident of Texas to be performed in whole or in part by either party in this State,* . . . (Italics are added for emphasis).

██ Article 2031b provides that a nonresident entering into a contract with a Texas resident performable in part by either party in Texas shall be deemed to be doing business in Texas. The contract in question obligated Burt to perform his payment obligations at the office of U-Anchor in Amarillo, Texas, and thus he was "doing business" in Texas within the meaning of the statute. We agree that in this respect, as well as with respect to "other acts that may constitute doing business," Article 2031b reaches as far as the federal constitutional requirements of due process will permit. We let stand the statement in *Hoppenfeld v. Crook,* 498 S.W.2d 52 (Tex.Civ. App.—Austin 1973, writ ref'd n. r. e.) "that the reach of Art. 2031b is limited only by the United States Constitution." See also *National Truckers Service, Inc. v. Aero Systems, Inc.,* 480 S.W.2d 455 (Tex.Civ.App.—Fort Worth 1972, writ ref'd n. r. e.).[1] The federal courts have similarly construed Article 2031b. *See Product Promotions, Inc. v. Cousteau,* 495 F.2d 483 (5th Cir. 1974), and the cases there cited. Furthermore, such a construction is desirable in that it allows the courts to focus on the constitutional limitations of due process rather than to engage in technical and abstruse attempts to consistently define "doing business." *See* Thode, *In Personam Jurisdiction; Article 2031b, the Texas "Long Arm" Jurisdiction Statute; and the Appearance to Challenge Jurisdiction in Texas and Elsewhere,* 42 Tex.L.Rev. 279, 307 (1964).

██ The question, then, becomes one of due process. In *Cousteau, supra,* the Fifth Circuit concluded that the relevant federal decisions established a dual test for determining whether a court may exercise its jurisdiction without depriving a non-resident defendant of due process of law: "First, 'there must be some minimum con-

tact with the state which results from an affirmative act of the defendant.' Secondly, 'it must be fair and reasonable to require the defendant to come into the state and defend the action.'" *Cousteau, supra,* at 494. *See also Jetco Electronic Industries, Inc. v. Gardiner,* 473 F.2d 1228 (5th Cir. 1973); 2 J. Moore, Moore's Federal Practice ¶ 4.25[5] (1975). In *O'Brien v. Lanpar Company,* 399 S.W.2d 340 (Tex.1966), this Court recognized the following statement of the three basic elements that must exist to sustain jurisdiction over a non-resident:

(1) The nonresident defendant or foreign corporation must purposefully do some act or consummate some transaction in the forum state; (2) the cause of action must arise from, or be connected with, such act or transaction; and (3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation.

*See Tyee Construction Co. v. Dulien Steel Products, Inc.,* 62 Wash.2d 106, 381 P.2d 245 (1963). It is evident that U-Anchor's cause of action against Burt is connected with the contractual obligation assumed by Burt and partially performable in Texas. However, Burt must also have purposefully done some act or consummated some transaction in Texas, and the assumption of jurisdiction by the Texas courts must be found not to offend traditional notions of fair play and substantial justice.

██ In *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), the Supreme Court admonished that it would be

---

1. It may be noted that in 1975 Rule 108 of the Texas Rules of Civil Procedure was amended to add the words shown in italics:

A defendant served with such notice shall be required to appear and answer in the same manner and time and under the same penalty as if he had been personally served with citation within the State *to the full ex-*

*tent that he may be required to appear and answer under the Constitution of the United States in an action either in rem or in personam.*

We stated that the purpose of the amendment is to permit acquisition of in personam jurisdiction to the constitutional limits.

"a mistake" to assume that the liberal due process standard enunciated in *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), "heralds the eventual demise of all restrictions on the personal jurisdiction of state courts." *Hanson, supra,* 357 U.S. at 251, 78 S.Ct. at 1238. Explaining the requirements of due process, the Court continued:

> The unilateral activity of those who claim some relationship with a non-resident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but *it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.* [Emphasis added].

*Id.* at 253, 78 S.Ct. at 1239. *See Shaffer v. Heitner,* —— U.S. ——, ——, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). In the instant case the contacts of Burt with Texas are minimal and fortuitous, and he cannot be said to have "purposefully" conducted activities within the State. Burt's contacts with Texas were not grounded on any expectation or necessity of invoking the benefits and protections of Texas law, nor were they designed to result in profit from a business transaction undertaken in Texas. The contract was solicited, negotiated, and consummated in Oklahoma, and Burt did nothing to indicate or to support an inference of any purpose to exercise the privilege of doing business in Texas. Simply stated, Burt was a passive customer of a Texas corporation who neither sought, initiated, nor profited from his single and fortuitous contact with Texas.

Furthermore, in the instant case the exercise of jurisdiction by Texas courts would offend traditional notions of fair play and substantial justice. As noted above, the only contact of Burt with Texas consisted of his execution of a contract stipulating that certain payments were to be made in Amarillo and his remittance of several payments to U-Anchor in Amarillo. Thus the quality, nature, and extent of Burt's activity in Texas is minimal. Indeed, it can be said that Burt has engaged in no "activity" in Texas, his only "activity" being the preparation and mailing of checks from his place of business in Oklahoma. Resolution of the question of the relative convenience of the parties results in a stalemate since it is no doubt more convenient to each party to litigate in his home state. However, since the contract was solicited, negotiated, and consummated in Oklahoma, Burt might reasonably expect its enforcement to be governed by Oklahoma law. Considering the basic equities and circumstances of the case, we hold that Burt would not be accorded due process of law if required to defend the suit of U-Anchor in Texas. *See Hoppenfeld v. Crook, supra; Sun-X International Company v. Witt,* 413 S.W.2d 761 (Tex.Civ.App.—Texarkana 1967, writ ref'd n. r. e.).

Numerous decisions of the Texas courts of civil appeals hold that on the facts there presented the non-resident defendant would not be denied due process by being subjected to suit in Texas. With one exception, those cases are distinguishable on their facts. For example, in *National Truckers Service, Inc. v. Aero Systems, Inc.,* 480 S.W.2d 455 (Tex.Civ.App.—Fort Worth 1972, writ ref'd n. r. e.), the defendant had been doing business in Texas through its subsidiary, Transystems, Inc. When the subsidiary became delinquent on its accounts, Aero agreed to guarantee the debts of Transystems, executed a guaranty agreement, and mailed it to National Truckers Service in Fort Worth. In reliance on this guaranty agreement, National Truckers continued to extend credit to Transystems. The guaranty agreement provided that payment would be made in Fort Worth and that the guaranty itself was performable at Fort Worth. Subsequently Transystems became delinquent on its accounts, and National Truckers filed suit in Texas to enforce the guaranty agreement. The Court of Civil Appeals held the contacts of Aero with Texas were sufficient to justify the assertion of in personam jurisdiction by the Texas courts, and

we found no reversible error in that holding. Of significance in that case was the fact that Aero voluntarily and purposefully agreed to guarantee the Texas debts of its Texas subsidiary. Aero should reasonably have expected to face suit in the Texas courts in the event its subsidiary defaulted on its obligations.

In *Uvalde Rock Asphalt Company v. Consolidated Carpet Corporation,* 457 S.W.2d 649 (Tex.Civ.App.—Beaumont 1970, writ ref'd n. r. e.), the contract forming the basis of the business relationship was solicited in Arizona by a Texas manufacturer. All debts were payable in San Antonio, Texas. Pursuant to the contract, the Arizona wholesaler placed several orders with the Texas manufacturer. The goods were delivered F.O.B. Houston, and on some orders the Arizona wholesaler requested delivery to Texas retailers. The Court of Civil Appeals concluded that the activity of the Arizona wholesaler was calculated to extract profits from markets in Texas. This factor, coupled with the additional contacts enumerated above, was sufficient to supply the "minimum contacts" demanded by due process.

*Estes Packing Company v. Kadish and Milman Beef Co.,* 530 S.W.2d 622 (Tex.Civ. App.—Fort Worth 1975, no writ), did not reach this Court. In that case a Chicago broker ordered beef from a Fort Worth packing company and resold it to a Massachusetts corporation. The broker sent both parties written confirmations of sale giving shipping instructions stating the beef was to be delivered by truck to the defendant's plant in Boston. The shipper was an independent contractor unrelated to either the Texas seller or the Boston buyer. The shipment was accompanied by an invoice stating the meat was offered for sale at the prices quoted on the invoice. The invoice also provided "All Bills Payable in Fort Worth." Kadish sent a check to Estes covering a portion of the shipment and noted on the back of the check that it was in full payment of all debts of Kadish to Estes. Estes refused to accept the check with that notation and subsequently filed suit. The Court of Civil Appeals concluded that these facts established the existence of a contract between Kadish and Estes. Further, the court held that due process would not be violated by the exercise of jurisdiction over Kadish even though Kadish's only contact with Texas was the remittance of one check to the Texas seller. This holding conflicts with our holding in the instant case and is disapproved.

■ The facts of this case bring it within the literal reach of Art. 2031b, but, as detailed above, the due process clause of the Fourteenth Amendment prohibits Texas courts from exercising jurisdiction over Burt in a suit arising out of his contract with U-Anchor. The nature and extent of the contacts of a non-resident with the forum state determine whether or not the forum may exercise in personam jurisdiction over the non-resident, but the infinite variety of such contacts and the vagueness of the constitutional standard render a more definitive articulation of due process requirements impossible. As noted in *Cousteau, supra,* no one formulation of the constitutional test could possibly encompass all the potentially important factors, nor could a formula perform the crucial task of weighing and balancing the relevant considerations. Narrow factual distinctions will often suffice to swing the due process pendulum. Here, as elsewhere, important constitutional questions prove immune to solution by checklist. *See* Annot., 20 A.L.R.3rd 1201 (1968); Thode, supra; Kurland, *The Supreme Court, the Due Process Clause and the In Personam Jurisdiction of State Courts—From Pennoyer to Denckla: A Review,* 25 U.Chi.L.Rev. 569 (1958); Comment, *The Texas Long-Arm Statute, Article 2031b: A New Process Is Due,* 30 Sw.L.J. 747 (1976); Comment, *Long-Arm and Quasi in Rem Jurisdiction and the Fundamental Test of Fairness,* 69 U.Mich.L.Rev. 300 (1970); Note, 34 U.La.L.Rev. 691 (1974).

The judgment of the Court of Civil Appeals is affirmed.