**WESTERN DESERT, INC.**

v.

**CHASE RESOURCES CORPORATION.**

Civ. A. No. 4-76-230.

United States District Court,
N. D. Texas,
Fort Worth Division.

Oct. 23, 1978.

Mark S. Stewart, McDonald, Sanders, Ginsburg, Phillips, Maddox & Newkirk, Fort Worth, Tex., for plaintiff.

Frank Finn, Jr., Ralph I. Miller, Timothy R. McCormick, Dallas, Tex., for defendant.

### ORDER AND MEMORANDUM

MAHON, District Judge.

There is now before the Court defendant Chase Resources Corporation's motion to dismiss.

The Court having considered said motion, plaintiff's response thereto, and having heard oral argument has determined that defendant Chase Resources Corporation's motion to dismiss should be denied.

■ The plaintiff seeking to establish the jurisdiction of a federal court has the burden to establish the Court's jurisdiction in response to a Rule 12(b)(2) motion challenging jurisdiction. *Product Promotions, Inc. v. Cousteau*, 495 F.2d 483 (5th Cir. 1974); 5 Wright & Miller, Federal Practice and Procedure § 1351 at 565 (1969).

Plaintiff in this lawsuit is a Panamanian Corporation with business offices in Fort Worth, Tarrant County, Texas and Tel Aviv, Israel. Defendant Chase Resources Corporation is a Michigan Corporation with agents located in Washington, D. C. and Tuscaloosa, Alabama. This lawsuit is based first on a written agreement between the parties concerned with the exploring and drilling for oil and gas in Egyptian territory

occupied by Israel. The second basis for the lawsuit is a promissory note executed by Chase Resources Corporation to Western Desert, Inc.

Western Desert based jurisdiction of this suit on diversity of citizenship pursuant to 28 U.S.C. § 1331. The sum in controversy exceeds $10,000.00. Neither plaintiff corporation nor defendant corporation are licensed to do business by the State of Texas. Defendant Chase Resources Corporation was served in this lawsuit by service of the amended complaint upon the Secretary of State of the State of Texas, pursuant to the Texas long-arm statute, Tex.Rev.Civ.Stat. Ann. art. 2031b (1964). Under the Tex.Bus. Corp.Act Ann. art. 8.01(B)(1), (9) (1977 Supp.), the plaintiff corporation though not licensed to do business by the State of Texas, may transact business in interstate commerce in Texas.

■ The Texas long-arm statute authorizes the assertion of personal jurisdiction over a non-resident corporation to the constitutional limits of due process. *Great Western United Corp. v. Kidwell*, 577 F.2d 1256 (5th Cir. 1978); *Product Promotions v. Cousteau*, 495 F.2d 483 (5th Cir. 1974); *Jetco Electronic Industries, Inc. v. Gardiner*, 473 F.2d 1228 (5th Cir. 1973); *U-Anchor Advertising, Inc. v. Burt*, 553 S.W.2d 760 (Tex.1977); *Hoppenfeld v. Crook*, 498 S.W.2d 52 (Tex.Civ.App.—Austin 1973, writ ref'd n. r. e.).

Judge Goldberg writing for the Fifth Circuit in the *Cousteau* case makes it clear that there is a dual test for the determination of whether a court may take jurisdiction without depriving a defendant of due process. The defendant must first have some minimum contact with the forum state which results from an affirmative act of the defendant. Secondly "it must be fair and reasonable to require the defendant to come into the state and defend the action." *Product Promotions, Inc. v. Cousteau, supra* at 494.

In the important case of *U-Anchor Advertising, Inc. v. Burt*, 553 S.W.2d 760, 762 (Tex.1977), the Texas Supreme Court in focusing on the constitutional limitations of due process held that a defendant must "have purposefully done some act or consummated some transaction in Texas, and the assumption of jurisdiction by the Texas courts must be found not to offend traditional notions of fair play and substantial justice." The *U-Anchor* case also held that,

The nature and extent of the contacts of a non-resident with the forum state determine whether or not the forum may exercise in personam jurisdiction over the non-resident, but the infinite variety of such contacts and the vagueness of the constitutional standard render a more definitive articulation of due process requirements impossible.

*U-Anchor, supra* at 764.

This case presents this Court with the difficult task of interpreting and reconciling not only the dicta but also the holdings on jurisdiction by the Texas Supreme Court in *U-Anchor, supra* and the Federal Fifth Circuit Court of Appeals in *Product Promotions, Inc. v. Cousteau, supra*. The question of whether a particular assertion of jurisdiction offends traditional notions of justice and fair play is a question of reasonableness. Such "questions of reasonableness are invariably ones of judgment. . . ." See *Great Western United Corp. v. Kidwell, supra* at 1269. The United States Supreme Court has recently characterized the complexity of such judgments where "[t]he greys are dominant and even among them the shades are innumerable." *Kulko v. Superior Court*, 436 U.S. 84, 98 S.Ct. 1690, 1695, 56 L.Ed.2d 132 (1978) as quoted by *Great Western United Corp. v. Kidwell, supra* at 1269.

The recent *Great Western United Corp.* case is the most significant Fifth Circuit decision addressed to personal jurisdiction under the Texas long-arm statute since the Supreme Court of Texas entered the significant decision of *U-Anchor v. Burt, supra* concerning the Texas long-arm statute. The *Great Western United Corp.* case states that the framework for the evaluation whether due process permits a court in Texas to exercise jurisdiction is based on an analysis of seven United States Supreme

Court cases. See *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *Travelers Health Ass'n v. Virginia*, 339 U.S. 643, 70 S.Ct. 927, 94 L.Ed. 1154 (1950); *Perkins v. Benquet Consol. Mining Co.*, 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952); *McGee v. International Life Ins. Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977); *Kulko v. Superior Court*, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978).

■ It is well established that the minimum contacts of a defendant with a state need not arise from actual physical activity of the defendant in a forum state. Activities taking place in other states which entail foreseeable effects in a forum state may be sufficient to satisfy the minimum contacts requirement of *International Shoe Co., supra*. See *Great Western United Corp., supra* at 1266; *Wilkerson v. Fortuna Corp.*, 554 F.2d 745, 748 (5th Cir. 1977); *Product Promotions, Inc. v. Cousteau, supra* at 496; *Travis v. Anthes Imperial Ltd.*, 473 F.2d 515 (8th Cir. 1973); *Eyerly Aircraft Co. v. Killian*, 414 F.2d 591 (5th Cir. 1969); *Hitt v. Nissan Motor Co., Ltd.*, 399 F.Supp. 838 (S.D.Fla.1975), *vacated* on other grounds 552 F.2d 1088 (5th Cir. 1977); *Maricopa County v. American Petrofina, Inc.*, 322 F.Supp. 467 (S.D.Cal.1971); 4 C. Wright & A. Miller § 1069.

Difficulty in reaching jurisdictional determinations arises from the fact that there is no objective test to apply to the facts of a particular case to determine whether constitutional due process limitations are exceeded by the *in personam* jurisdictional assertion. *Benjamin v. Western Boat Building Corp.*, 472 F.2d 723, 725 (5th Cir. 1973).

The governing principle must remain the evaluation of fairness to the defendant to be subjected to a lawsuit in a distant forum. It has been stated by the Fifth Circuit that the "jurisdictional touchstone" is the "presence of sufficient in-state business activity to indicate a purposeful enjoyment of the benefits and protections of that state's law." *Benjamin v. Western Boat Building Corp., supra* at 726. Such a "jurisdictional touchstone" is obviously based on the key language of *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958), that "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protection of its laws." The *Cousteau* case states that this requirement of *Hanson v. Denckla* "should not be read too literally." *Product Promotions, Inc. v. Cousteau, supra* at 496.

In the alternative this Court notes as an aside that it is impressed and greatly sympathetic to the dissenting position of Judge Godbold regarding the requirement concerning the benefits and protection of a forum state's laws. As stated in the *Great Western United Corp.* dissent:

Due process requires that the defendant have purposefully availed himself of the benefits and protection of Texas law. The majority speculate that this requirement should not be understood literally but assert that in any event the requirement has been met. I believe the requirement means what it says. And the majority's assertion that in any event the requirement has been met lacks substance.

Recent cases affirm the vitality of the requirement that the defendant have purposefully availed himself of the benefits and protection of the forum state's laws.[2] The majority argue the requirement means only that the plaintiff's unilateral activity is insufficient to support personal jurisdiction over the defendant. Certainly the requirement expresses this notion, *see Hanson v. Denckla*, 357 U.S. at 253, 78 S.Ct. at 1239, 2 L.Ed.2d at 1298, but the language of benefits and protection is not surplusage. Rather it embodies the idea that it is in part the defendant's enjoyment of the benefits and protection of a state's laws that makes it fair to require the defendant to appear in the state's courts. *See International Shoe Co. v.*

*Washington,* 326 U.S. at 319, 66 S.Ct. at 159, 90 L.Ed. at 103. The Supreme Court has treated the language of benefits and protection as a literal requirement.

*Great Western United Corp. v. Kidwell, supra* at 1288. Also see *Barnstone v. Congregation Am Echad,* 574 F.2d 286 (5th Cir. 1978). Certainly such a strict reading of *Hanson v. Denckla, supra* seems more appropriately reconcilable with the Texas Supreme Court holding and interpretation of the Texas long-arm statute in *U-Anchor Advertising, Inc. v. Burt, supra* than does the less literal reading of *Product Promotions, Inc. v. Cousteau, supra.* However, the majority opinion in *Great Western United Corp. v. Kidwell* specifically states:

> By following *Product Promotion's* interpretation of *Hanson v. Denckla* we do not hold, as the dissent suggests we do, that *Hanson v. Denckla's* requirement that a defendant purposefully avail himself of the benefit of state law has been eliminated. None of the cases cited in the dissent conflict with *Product Promotion's* holding that the *Hanson v. Denckla* language should be read as a restatement of the due process rule that the defendant must create sufficient contacts with the forum before a state may assert personal jurisdiction over him.

*Great Western United Corp. v. Kidwell, supra* at n. 27.

■ The question of whether the defendant in this case has created sufficient contacts with Texas such that personal jurisdiction may be obtained under the Texas long-arm statute is a question of fact. 2 J. Moore, *Moore's Federal Practice,* ¶ 4.25[5] at 1172. At the specific request of this Court the parties to this lawsuit submitted to the Court chronological listings of the significant contacts and transactions between Chase Resources Corporation and Western Desert, Inc. These contacts consist of telephone calls, telexes, meetings, payment, and signing of documents. The Court will not note each contact brought to its attention but only those it deems most significant:

(1) On February 28, 1976 a representative of Chase received the written agreement by mail in Washington, D. C. He signed it and returned it by mail to Western Desert in Fort Worth.

(2) On April 17, 1976 a representative of Chase signed a Supplementary Agreement dated April 14, 1976 and transmitted the Agreement by letter to Western Desert on April 19, 1976.

(3) On April 22, 1976 a representative of Chase sent partial payment of Chase's obligation to Western Desert in Fort Worth. Chase and Western Desert also exchanged letters from Tuscaloosa, Alabama to Fort Worth, and from Fort Worth to Tuscaloosa. No agreement between the parties specifically stated that payment was to be made in Fort Worth, Texas. However, the parties did use the prime rate of the First National Bank of Fort Worth as the method of calculating interest to be due by Chase in the promissory note payable to Western Desert

(4) On May 20, 1976 a meeting was held in Fort Worth, Texas between representatives of Chase and Western Desert.

(5) On May 30, 1976 and May 31, 1976 meetings were held between representatives of Chase and Western Desert in Charlevoix, Michigan.

(6) On June 18, 1976 a meeting was held between representatives of Chase and Western Desert in Chicago, Illinois.

(7) On July 2, 1976 a meeting was held in Fort Worth, Texas between representatives of Western Desert and Chase.

(8) On July 11, 1976 a meeting was held in Grand Rapids, Michigan between representatives of the parties.

(9) On August 3, 1976 a meeting was held in Grand Rapids, Michigan.

The Court having considered the above contacts, the additional contacts brought to the Court's attention by the chronologies submitted to the Court by the parties, and the applicable holdings of *Product Promotions, Inc. v. Cousteau, supra; Great Western United Corp. v. Kidwell, supra* ; and *U-Anchor Advertising, Inc. v. Burt, supra,*

has determined that the exercise of personal jurisdiction under the Texas long-arm statute is permissible under the facts of this case and the law in this circuit.

Defendant's motion to dismiss is denied. Defendant is ordered to answer plaintiff's complaint in twenty (20) days.

It is so ORDERED.