Teresa Herrero **GUTIERREZ**, Benjamin Perez Moreno, and Isabel Ruiperez Ortega, Plaintiffs,

v.

**RAYMOND INTERNATIONAL, INC.,** Offshore Constructors, Inc., The Drilling Barge, Bredford Dolphin, J. Ray McDermott & Co., Inc., Oceanic Contractors, Inc., and Occidental Petroleum Corp., Defendants.

**Civ. A. No. H–77–1639.**

United States District Court,
S. D. Texas,
Houston Division.

July 25, 1979.

Rehearing Denied Oct. 17, 1979.

Hubert L. Stone, Jr., Corpus Christi, Tex., for plaintiffs.

Eugene Silva, Vinson & Elkins, Houston, Tex., for defendants.

## MEMORANDUM AND ORDER

SEALS, District Judge.

Presently pending before the Court is the motion to dismiss filed by the Occidental Petroleum Corporation. This action arises out of the disappearance of Jesus Perez Ruiperez, a Spaniard, from the Bredford Dolphin, a drilling barge being used in connection with the oil platform Piper Alpha in the North Sea. Plaintiffs, also Spanish citizens, filed their First Amended Original Complaint seeking damages pursuant to the Jones Act, 46 U.S.C. § 688, and the Death on the High Seas Act, 46 U.S.C. § 761, and the general maritime law. The Amended Complaint names Occidental Petroleum (OPC), a California corporation, as a defendant. Plaintiffs allege that OPC was an employer of the deceased, that the defendants' negligence caused the death of Ruiperez, and that the Bredford Dolphin was unseaworthy.

OPC does not maintain an office or a place of business in Texas. It has not appointed an agent for service of process in Texas and is not licensed to do business in the state. The plaintiffs therefore have attempted to effectuate service of process on OPC under Rules 4(d)(7) and 4(e), Fed.R. Civ.P. By serving the Secretary of State, the plaintiff have predicated the existence of in personam jurisdiction over the nonresident defendant on the Texas long arm statute, Tex.Rev.Civ.Stat.Ann. art. 2031b.

█ It may seem anomalous to require the plaintiffs to show the amenability of OPC to service of process in a Texas state court when they are seeking to have a federal district court exercise in personam jurisdiction in a case involving a federal, and not a state, claim.[1] Rule 4(d)(7) authorizes service in the *manner* provided by state law; OPC does not contend that service was not made in that manner. Rather, proper service turns upon whether Rule 4(d)(7) may be employed without reference to Rule 4(e) which requires in some situations that service be made in the manner and under the circumstances prescribed by state statute or rule. The Court concludes that it cannot and that the plaintiffs must show that OPC is amenable to service of process under the Texas long arm statute.

It is unnecessary for the purpose of this Memorandum to attempt to unravel all of the questions surrounding the relationship of Rules 4(d)(7) and 4(e) or to recount all of the cases which have considered this issue. Suffice it to say that the power of a federal court to maintain in personam jurisdiction over a defendant is limited both by the due process clause and by Congress. For certain kinds of litigation Congress has authorized service of summons upon a person not an inhabitant of or found within the state in which the district court is held. *See, e. g.* 15 U.S.C. §§ 22, 25, 77v & 78aa; 28 U.S.C. § 1655. In such a case service arguably may be obtained without reference to the circumstances prescribed by state statute or rule. *Black v. Acme Markets, Inc.,* 564 F.2d 681, 685 n. 5 (5th Cir. 1977); *Hilgeman v. Nat'l Ins. Co. of America,* 547 F.2d 298, 300–01 (5th Cir. 1977). Where, however, Congress has not seen fit to authorize by statute service upon a nonresident, unless service may be obtained pursuant to another subsection of Rule 4,[2] the plaintiffs must look to state law. Congress has not enacted a statute authorizing service upon nonresident defendants in admiralty cases, and the service upon OPC is ineffective unless plaintiffs can show that OPC is amenable to suit under Texas law.

In order for the Court to find that OPC is amenable to service of process pursuant to the Texas long-arm statute, there must be a determination that OPC was doing business within the State as that term has been defined by Article 2031b. If a foreign corporation is doing business within the state, and it does not have an agent for service of process, the acts constituting doing business are deemed the equivalent of the appointment of the Secretary of State as agent for service of process "in any action, suit or proceedings arising out of such business

1. Although the plaintiffs have not set forth in the Amended Complaint the statutory basis for subject matter jurisdiction, it may be assumed that the case is brought under 28 U.S.C. § 1333(1).

2. The plaintiffs can take no refuge in those cases which have held that service under Rule 4(d)(3) should be evaluated without reference to state law. Those cases have relied on the following dicta in *Angel v. Bullington,* 330 U.S. 183, 192, 67 S.Ct. 657, 662, 91 L.Ed. 832 (1947): "Of course, where resort is had to a federal court not on grounds of diversity of citizenship but because a federal right is claimed, the limitations upon the courts of a State do not control a federal court. [*Holmberg v. Armbrecht,* 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946)]." Thus, the Third Circuit has noted that "federal courts considering questions arising under the Constitution of the United States or federal statutes properly may exercise jurisdiction limited only by the due process clause of the Fifth Amendment. Even where the procedure for exercising that jurisdiction is pre- scribed by state law, these courts need not be bound by restrictions found in the state law." *Hartley v. Sioux City and New Orleans Barge Lines, Inc.,* 379 F.2d 354, 356 (3d Cir. 1967). The Court in *Hartley* went on to note that the courts have disregarded state law only when service could be obtained under Rule 4(d)(3). The only possible application of rule 4(d)(3) in this case would be if plaintiffs could show that the Secretary of State is "an agent authorized . . . by law to receive service of process." First, it is not certain that state law may be utilized to determine who is an agent authorized by law. C. Wright & A. Miller, Federal Practice and Procedure: Civil § 1098 (1969). Second, where service on an agent requires forwarding the process out of state, Rules 4(d)(7) or 4(e) should control. *Id.* Third, the only legal appointment of the Secretary of State as agent for a foreign corporation is pursuant to Article 2031b and the result under 4(d)(3) and 4(d)(7) would be the same at any rate.

done in the State." Article 2031b § 3. Thus, in order to show that the Secretary of State was constructively appointed agent for service of process, the plaintiffs must show that OPC was doing business and that this action arises out of that business engagement.

Section 4 of Article 2031b provides as follows:

> For the purpose of this Act, and without including other acts that may constitute doing business, any foreign corporation, . . . shall be deemed doing business in this State by entering into a contract by mail or otherwise with a resident of Texas to be performed in whole or in part by either party in this State, or the committing of any tort in whole or in part within this State.

In order to be amenable to suit under Article 2031b § 4, plaintiffs traditionally have been required to show that the corporation's activities satisfy either the contract or tort component of section 4. Article 2031b, however, is an effort to stretch Texas's jurisdiction over non-residents to the limits of due process, and the Court also will consider whether OPC has committed "other acts that may constitute doing business."

The plaintiffs have not alleged that a tort has been committed in whole or in part in Texas. Nor is it alleged that any tort committed elsewhere has had any effect in the forum state. Thus, it will be assumed that the tort component of Article 2031b § 4 is inapplicable.

The contract portion of the Texas long-arm statute requires the plaintiffs to show that "(1) a contract to be performed in whole or in part within Texas existed between [the parties] and (2) the present suit arose out of that contractual arrangement." *Product Promotions, Inc. v. Cousteau,* 495 F.2d 483, 491 (5th Cir. 1974). *See also Walker v. Newgent,* 583 F.2d 163 (5th Cir. 1978).

■ The plaintiffs have alleged two contractual relationships in support of their assertion of in personam jurisdiction. The

first of these is that OPC was an employer of the deceased. Amended Complaint at III. This certainly fails to satisfy the plain meaning of the statute which requires that the contract be entered into with a resident of Texas. Neither of the parties to the alleged contract of employment are Texas residents.

■ The second contractual relationship upon which jurisdiction is based is the involvement of OPC's subsidiary, Occidental of Britain (OBI), in the Piper Alpha, a drilling rig operating in the North Sea. OBI's contract, however, was with Oceanic Contractors, Inc., a corporation organized and existing under the laws of the Republic of Panama with offices in Beirut, Lebanon. Assuming for the sake of argument that OBI is the alter ego of OPC, that contract would not support the exercise of in personam jurisdiction over either the subsidiary or the parent corporation. First, the deceased and those in privity with him are not parties to the contract, and the contract was not entered into with a Texas resident. Second, the plaintiffs have made no allegations concerning the Piper Alpha in their Amended Complaint and the Court is uncertain of the connection between the Piper Alpha and this litigation. The Defendant, in its Memorandum of Law in support of its motion to dismiss, explained that the Bredford Dolphin, the in rem defendant, is an ocean barge which was used in support of the Piper Alpha. Nevertheless, the plaintiffs have not alleged that Ruiperez was aboard the Piper Alpha, or that he was employed as a member of its crew. The contractual rights OBI has in the Piper Alpha not only appear insufficient to make OPC amenable to process, but have only questionable relevance to this lawsuit.

■ The only connection that the plaintiffs have shown between the contract and Texas is a provision that any dispute between the parties with respect to the contract shall be settled by arbitration in Houston, Texas, or such other places as the parties may agree.[3] Even if arbitration had

---

**3.** Article XXVI of the contract between OBI and Oceanic Contractors, Inc., provides: "All

controversies between parties which cannot be amicably resolved shall be settled by arbitra-

taken place in Houston, that "contact" would not make the contract one that was entered into with a Texas resident to be performed in whole or in part in this state. The Texas Supreme Court has held that a "single and fortuitous contact with Texas" will not justify the assertion of jurisdiction by the Texas courts even when the contact meets the literal requirements of Article 2031b. *U–Anchor Advertising, Inc. v. Burt,* 553 S.W.2d 760, 763 (Tex.1977). This fortuitous connection does not meet those requirements because the plaintiffs have not shown that either party is a resident of Texas. An agreement to hold an arbitration in Houston is not "grounded on the expectation or necessity of invoking the benefits and protections of Texas law, nor [is it] designed to result in a profit from a business transaction undertaken in Texas." *Id.* The designation of Houston as a possible place for arbitration is so incidental to the contract as not to constitute performance thereunder. Article 8.01(B)(1), Tex. Bus.Corp.Act Ann., provides that a corporation will not be considered to be doing business in the state merely because it is a party to an arbitration proceeding in the state. ". . . [A] foreign corporation shall not be considered to be transacting business within this state . . . by reason of . . . [m]aintaining or defending . . . arbitration proceedings . . . ."[4] Accordingly, even if OBI is the later ego of OPC, the existence of such an arbitration clause does not make OPC amenable to suit in Texas for all actions in any way connected with the subject matter of that contract.

■ Another defect in plaintiffs' argument that this Court has in personam jurisdiction because of the contract component of Article 2031b § 4 is the failure to show that this cause of action arose out of the contractual relationship. That failure is a result of the contention that, in spite of the

clear holdings of the Fifth Circuit and the Texas Supreme Court, there need not be a connection between the contract and the cause of action.

To support that proposition the plaintiffs have tendered two district court cases: *Keane v. Global Marine Inc.,* Civil Action No. H–77–1006 (S.D.Tex.1978) (Singleton, J.); *Navarro v. Sedco, Inc.,* 449 F.Supp. 1355 (S.D.Tex.1978) (Singleton, J.). The first of these expressly avoided discussion of Texas law because service of process was pursuant to Rule 4(d)(3). *Keane, supra,* slip op. at 8. It is therefore of little aid in ruling upon this motion.

In *Navarro v. Sedco, Inc., supra* at 1359–60, the court stated:

The court finds no merit in defendant's contention that in order to be amenable to service [under] article 2031b plaintiff's cause of action must arise directly out of defendant's contacts with Texas. . . . [I]n several decisions upholding a defendant's amenability to service pursuant to article 2031b, the Fifth Circuit has relied on defendant's activities unrelated to the cause of action involved in each case. See *Eyerly Aircraft Co. v. Killian,* 414 F.2d 591 (5th Cir. 1969); *Wilkerson v. Fortuna Corp.,* 554 F.2d 745 (5th Cir.), *cert. denied,* 434 U.S. 939, 98 S.Ct. 430, 54 L.Ed.2d 299 (1977); *Black v. Acme Markets, Inc.,* 564 F.2d 681 (5th Cir. 1977). . . . [I]n *Eyerly, supra,* the Fifth Circuit expressly rejected the contention . . . that the Texas Supreme Court has interpreted article 2031b to require that the cause of action sued upon arise directly from the defendant's activities in the forum. See *Eyerly, supra,* at 599, footnote 12. . . . [T]he court is aware of no Texas decision holding article 2031b inapplicable to causes of action not arising directly from the defendant's activities with the forum. . . . [F]inally, the recent decision of the Texas

---

4. tion in accordance with the rules of the American Arbitration Association. Such arbitration shall be held in Houston, Texas, or such other place as the parties may agree."

4. This provision's definition of doing business is, of course, a basis for analogy only, and not binding in a construction of Article 2031b.

Supreme Court in *U–Anchor Advertising, Inc. v. Burt*, 553 S.W.2d 760 (Tex.1977), appears to the court to foreclose any argument that article 2031b should read in the restrictive fashion urged by [the defendant].

In order to analyze this statement, it is best to separate those cases which rely on the contract portion of Article 2031b § 4, and other cases which do not attempt "to utilize the long arm statute's thin fiction of a single tort or single contract as the basis for service of process." *Wilkerson v. Fortuna, supra*, 554 F.2d at 749.

The Fifth Circuit's most recent discussion of the Texas long arm statute reiterates that the contract portion of the statute requires the plaintiffs to make a prima facie showing that "(1) a contract to be performed in whole or in part within Texas existed between itself and [the defendant] and (2) the present suit arose out of that contractual arrangement." *Walker v. Newgent*, 583 F.2d 163, 166 (5th Cir. 1978), *quoting from, Product Promotions, Inc. v. Cousteau*, 495 F.2d 483, 491 (5th Cir. 1974). That requirement stems from the Texas Supreme Court's statement that "the cause of action must arise from, or be connected with, [the] act or transaction" consummated in the forum state. *U–Anchor Advertising, Inc., supra* at 762, *quoting from, O'Brien v. Lanpar Company*, 399 S.W.2d 340 (Tex. 1966). In all the cases in which jurisdiction was supported by the existence of a contract, the court has held that the lawsuit must arise from that contractual relationship.

The cases cited in *Navarro, supra*, in no way repudiate that requirement. *Eyerly Aircraft Co. v. Killian*, 414 F.2d 591 (5th Cir. 1969), was a case which relied on the fiction of a single tort. The facts concerned "a corporation, whose residence is in state X, . . . sued in state Y for a tort committed in part in state Y." *Id.* at 600 n. 12. *Eyerly* distinguished cases, like this one, "where a corporation whose residence is in state X, commits a tort in state Y and is sued for that tort in state Z. Unless the corporation had substantial contacts with

state Z, the courts in state Z could not assert jurisdiction over the person of the foreign corporation. *Turner v. Jack Tar Grand Bahama, Ltd.*, 5 Cir. 1965, 353 F.2d 954; *Lindley v. St. Louis-San Francisco Ry. Co.*, 7 Cir. 1968, 407 F.2d 639; *Blount v. Peerless Chemicals (P.R.), Inc.*, 2 Cir. 1963, 316 F.2d 695, cert. denied, *Colbert v. Peerless Chemicals Inc.*, 375 U.S. 831, 84 S.Ct. 76, 11 L.Ed.2d 62 . . . ." *Id.* at 598 n. 7. Similarly, *Wilkerson v. Fortuna Corp.*, 554 F.2d 745 (5th Cir. 1977), was a tort action. After recognizing that the Texas courts require that the action arise from the defendant's Texas activities, the Fifth Circuit stated that "if Texas had to decide this case, it would hold it to be sufficient that the claim arose from Fortuna's general endeavors in Texas." *Id.* at 749. *See also Black v. Acme Markets, Inc.*, 564 F.2d 681, 686 (5th Cir. 1977) (wrongful act outside Texas had reasonably foreseeable effects in the state). Accordingly, by failing to show that the contract was in any way related to the cause of action, even if it could be considered to require part performance in Texas, there is no justification for asserting jurisdiction based on a contractual arrangement.

■ The remaining ground for finding in personam jurisdiction under Article 2031b § 4 is that OPC has committed "other acts that may constitute doing business." That portion of § 4 should be interpreted as broadly as the federal constitutional requirements of due process will permit. *See U–Anchor, supra*, 762. The other acts which the plaintiffs have suggested are OPC's extensive ownership of land in Texas, and the existence of several OPC subsidiaries residing in Texas. Additionally, the plaintiffs have claimed that funds used by OBI in connection with the Piper Field in the North Sea were transferred through the Houston offices of Occidental Oil and Gas Corporation, another California corporation wholly owned by OPC. None of these "contacts" are sufficiently "continuous and systematic" to make OPC amendable to service of process in Texas for acts unrelated to those contacts. *See Perkins v. Benguet Mining Company, infra*.

■ With respect to the ownership in land property interests in Texas, the Supreme Court's statements in *Shaffer v. Heitner*, 433 U.S. 186, 207–08, 97 S.Ct. 2569, 2581–82, 53 L.Ed.2d 683 (1977), is instructive.

. . . [T]he presence of property in a State may bear on the existence of jurisdiction by providing contacts among the forum State, the defendant, and the litigation. For example, when claims to the property itself are the source of the underlying controversy between the plaintiff and the defendant, it would be unusual for the State where the property is located not to have jurisdiction. In such cases, the defendant's claim to property located in the State would normally indicate that he expected to benefit from the State's protection of his interest. The State's strong interest in assuring the marketability of property within its borders and in providing for peaceful resolution of disputes about the possession of that property would support jurisdiction, as would the likelihood that important records and witnesses will be found in the State. The presence of property may also favor jurisdiction in cases, such as suits for injury suffered on the land of an absentee owner, where the defendant's ownership of the property is conceded but the cause of action is otherwise related to rights and duties growing out of that ownership. (footnotes omitted)

Thus, the ownership of property in a state does not indicate that the defendant is subjected to in personam jurisdiction for causes of action not incidental to those ownership rights. The Supreme Court in *Shaffer v. Heitner* subjected all judicial jurisdiction to the minimum contacts test. The holding is that

The presence of property is not a sufficient contact . . . where the controversy is "completely unrelated" to the property. . . . Moreover, the Court

apparently believes that jurisdictional fairness requires more than a defendant's assuming the risk that the state would exercise jurisdiction over his property; rather, a relationship between the controversy and the state or the property itself is a predicate of fairness in the context of the federal system. . . . This . . applies with equal force to jurisdiction based on real or tangible property within the forum.

*The Supreme Court, 1976 Term*, 91 Harv. L.Rev. 72, 155 & 158 & 195 (1977).

Although it is not entirely clear, it seems that the plaintiffs could not have litigated the claim with OPC arising in the North Sea by attaching OPC's interest in land and its interest in its subsidiaries. Accordingly, under the single standard for determining judicial jurisdiction, it would be improper to allow those contacts to support an action brought in personam. *But see Shaffer v. Heitner, supra*, 217, 97 S.Ct. 2586 (Powell, J., concurring). The plaintiffs have shown no connection between the forum state and the litigation, and that is required for the existence of in personam jurisdiction.

Further, the fact that certain funds may have been transmitted to OBI through a Houston office does not show any continuous or systematic activity within Texas. A mere showing that arrangements between OBI and another nonresident subsidiary of OPC involved incidental contact with Houston, Texas, does not render OPC amenable to suit in Texas. This Court will not presume to banish corporate law principles from jurisdictional analysis.

Another matter which must be considered is the effect of OPC's withdrawal from Texas on July 11, 1977, more than one year after Ruiperez disappeared from the Bredford Dolphin. Plaintiffs seem to be using this fact to illustrate the fairness of asserting jurisdiction over OPC. A more compelling argument is that pursuant to Article 2031b § 6,[5] the withdrawal constituted ap-

---

5. Tex.Rev.Civ.Stat.Ann. art. 2031b § 6 provides: "When any corporation, association, joint stock company, partnership or natural person becomes a non-resident of Texas, as

that term is commonly used, after a cause of action shall arise in this State, but prior to the time the cause of action is matured by suit in a court of competent jurisdiction in this State,

pointment of the Secretary of State as agent for service of process.

A construction of the statute according to its plain meaning suggests that it is inapplicable because plaintiffs' cause of action cannot be said to have "arisen" in Texas as that concept has been developed in vested rights choice of law methodology. *See, e. g., Carrol v. Lanza*, 349 U.S. 408, 75 S.Ct. 804, 99 L.Ed. 1183 (1958) (A forum state may choose to "apply its own rule of law to give affirmative relief for an action arising within its own borders."); *George v. Douglas Aircraft Co.*, 332 F.2d 73 (2d Cir.), *cert. denied*, 379 U.S. 904, 85 S.Ct. 193, 13 L.Ed.2d 177 (1964). *See also Leroy v. Great Western United Corp.*, 443 U.S. 173, 178, 99 S.Ct. 2710, 2714, 61 L.Ed.2d 464 (1979) ("the claim arose in Idaho. . ."); 28 U.S.C. § 1391(b). Yet, the Court hesitates before giving the section such a construction where it is unnecessary to the disposition of this motion.[6] The Fifth Circuit has acknowledged that "Article 2031b represents an effort by Texas to exploit to the fullest the expanding limits of in personam jurisdiction . . .." *Jetco Electronic Industries, Inc. v. Gardiner*, 473 F.2d 1228, 1234 (5th Cir. 1973). That effort should be presumed to extend to Article 2031b § 6. The Court is unaware of any case in which a Texas court has examined the language "after a cause of action shall arise in this State," as the issue has not been presented in any reported decision which has interpreted the section. In *Collins v. Mize*, 447 S.W.2d 674, 675–76 (Tex. 1969), a case involving, *inter alia*, the conveyance of land situated in Texas, the Court stated: "We see no problem of due process when the forum state is determining a controversy arising out of a transaction consummated in the forum state at a time when the defendant himself was a resident of the forum state." This case is, of course, distinguishable. For OPC to be amendable to process under section 6, the Court would be required to hold that there is no problem of due process when a forum state adjudicates a controversy arising outside the state between nonresident plaintiffs and a nonresident corporation which is being brought into the suit because of acts done by its nonresident subsidiary.

■■■ A resolution of this issue requires the reconciliation of two apparently contradictory principles. First, a state may take jurisdiction over a corporation which has withdrawn with respect to claims arising within the state. That principle was stated by the First Circuit as follows:

> It is settled that a state may make provision for suit in its courts against a foreign corporation which once did business there, but which now has ceased to do so. This statement of power of a state, however, is usually, perhaps always, coupled with the proviso that the claim sought to be sued on arose out of the business done by the corporation in the state.

*Ladd v. Brickley*, 158 F.2d 212, 217 (1st Cir. 1946).

when such corporation, association, joint stock company, partnership or natural person is not required to appoint a service agent in this State, such corporation, association, joint stock company, partnership, or natural person may be served with citation by serving a copy of the process upon the Secretary of State of Texas, who shall be conclusively presumed to be the true and lawful attorney to receive service of process; provided that the Secretary of State shall forward a copy of such service to the person in charge of such business or an officer of such company, or to such natural person by certified or registered mail, return receipt requested."

**6.** A consideration of *Siders v. Upper Mississippi Towing Corporation*, 423 F.2d 535 (3d Cir. 1970), fortifies the determination to avoid an unnecessary original construction of the Texas statute. In an earlier case, *Hartley v. Sioux City & New Orleans Barge Lines, Inc.*, 379 F.2d 354 (3rd Cir. 1967), the Third Circuit predicted that the Pennsylvania Courts would interpret the language "action arising" found in the Pennsylvania long arm statute, 15 Purdon's Stat.Ann. § 2011(B), to mean that the action must arise out of the actions or omissions of the defendant within Pennsylvania. The Pennsylvania Supreme Court held that the prediction was wrong, and the Third Circuit now holds that the language "apparently means nothing more than that the cause of action is filed in Pennsylvania." *Siders, supra*, at 537 n. 3. *See also Inpaco, Inc. v. McDonald's Corp.*, 413 F.Supp. 415, 419 n. 4 (E.D.Pa.1976); *Glen Knit Industries, Ltd. v. E.F. Timme & Sons, Inc.*, 384 F.Supp. 1176, 1177 (E.D.Pa.1974).

Second, in *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952), the Supreme Court decided that as a matter of federal due process a state is not prohibited from entertaining proceedings against a foreign corporation which, though not licensed, is doing business in the state, even though the cause of action sought to be enforced does not arise out of the corporation's activities within the state and even though brought by a nonresident plaintiff. This court, although aware of no case in which these two principles have been considered together, concludes that the fact that OPC was licensed to do business within the forum state at the time the cause of action accrued, in conjunction with the other activities shown by the plaintiffs, does not render the service of process on the Secretary of State sufficient.

A state's power to exercise in personam jurisdiction over a nonresident corporation which has withdrawn was established by the Supreme Court in *State of Washington ex rel. Bond & Goodwin & Tucker v. Superior Court*, 289 U.S. 361, 364, 53 S.Ct. 624, 626, 77 L.Ed. 1256 (1933). That case holds:

> The State need not have admitted the corporation to do business within its borders. . . . Admission might be conditioned upon the requirement of substituted service upon a person to be designated either by the corporation . . . or might, as here be upon the terms that if the corporation had failed to appoint or maintain an agent service should be made upon a state officer. . . . The provision that the liability thus to be served should continue after withdrawal for the State afforded a lawful and constitution-

al protection of persons who had there transacted business with the appellant. *Id.* at 364, 53 S.Ct. at 626 (citations omitted).[7]

Section 48 of the Restatement (Second) of Conflict of Laws (1971) provides that "[a] state has power to exercise judicial jurisdiction over a foreign corporation which has done business in the state, but has ceased to do business there at the time when the action is brought, with respect to causes of action arising from the business done in the state." *See also* Section 93 of the Restatement of Conflict of Laws (1934). That statement, like the Supreme Court's in *Washington v. Superior Court, supra,* also is limited to actions arising out of the withdrawn corporation's activities within the state. The question presented in this case is whether that principle may, consistent with due process, be extended to apply in cases in which the cause of action is unconnected with the state because it neither arose in Texas nor involves plaintiffs who are Texas citizens.

In *Hunter v. Mutual Reserve L. Ins. Co.*, 218 U.S. 573, 31 S.Ct. 127, 54 L.Ed. 1155 (1910), the Supreme Court held that a corporation which had withdrawn from a state could not be subjected to suit in that state in actions which neither arose in the state nor involved a plaintiff who resided in the forum state. Hunter brought the action in New York upon five judgments recovered by default in North Carolina by Wadsworth, a citizen of North Carolina. The North Carolina actions arose out of policies of insurance issued by the defendant. One of the policies had been issued to a North

---

**7.** Whereas in *Washington v. Superior Court* the Court relied in part on the fiction that the corporation consented to the service, in Texas that consent is not entirely fictitious. Article 8.14(A)(4), Tex.Bus.Corp.Act, Ann., requires that a withdrawing corporation consent to service of process on the Secretary of State in any action arising in Texas. This statute provides as follows:

> A foreign corporation authorized to do business in this State may withdraw from the state upon procuring from the Secretary of State a certificate of withdrawal. In order to procure such a certificate of withdrawal,

such foreign corporation shall deliver to the Secretary of State an application for withdrawal, which shall set forth: . . . (4) That the corporation revokes the authority of its registered agent in this state to accept service of process and consents that service of process in any action, suit, or proceeding based on any cause of action arising in this state during the time the corporation was authorized to transact business in this state may thereafter be made on such corporation by service thereof on the Secretary of State."

Thus, the scope of consent is still at issue.

Carolina resident and the others to citizens of New York and New Jersey, and then assigned to Wadsworth. Service had been made on the defendant by serving North Carolina's insurance commissioner pursuant to a state statute. After default judgments were obtained, Hunter became the owner of the judgments. The federal question was whether full faith and credit required the New York courts to enforce the four judgments involving the New York and New Jersey assignors. Hunter made two arguments to the Supreme Court. First, the defendant had fulfilled four other obligations in North Carolina two of which were incurred after the withdrawal from the state. After noting that these transactions were unrelated to the present judgments, the Court held that the fulfillment of those obligations did not constitute "doing business." Second, the Court considered whether the statute permitting service on the insurance commissioner was valid with respect to the four policies issued in New York and New Jersey. The opinion states:

> The next contention is that, even if defendant did withdraw from the state in good faith, the authority of the insurance commissioner to receive service of process continued as long as the company had outstanding liabilities in the state. And this, it is insisted, constituted the duration of the authority not only for causes of action arising in the state, but for causes of action arising in other states. In other words, that the language in the statute is not limited by its purpose to protect the resident policy holders of the company, but for the benefit of every litigant upon any cause of action; and to use the graphic language of the court of appeals, to "perpetuate a local forum to which under the guise of an assignment to some resident, nonresidents of far distant states might flock for the purpose of instituting litigation upon contracts issued to them at their homes, against a corporation there readily subject to service, and which long before had attempted in good faith to withdraw from the jurisdiction thus hunted out." . . .

> . . . . .

Defendant did not have "a domicile of business" in the state, nor were the contracts to be performed there. It in good faith withdrew from the state . . . . . Defendant . . . revoked the power which it had given to the insurance commissioner to accept service for it. Revoked it as far as it could do so. It could not revoke it as to any "interest or right founded or created in faith thereof," and which "required its perpetuation and continuance," and as the court of appeals has correctly said, it would be extremely inequitable to regard it as irrevocable to plaintiff and those in his situation.

*Id.* at 588 & 590–91, 31 S.Ct. at 131–32. The question which therefore remains is whether the "expanding limits of *in personam* jurisdiction" have vitiated this precedent.

The strongest indication that *Hunter* has been eroded is *Perkins v. Benguet Mining Company*, 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952), in which the Supreme Court held that the due process clause of the fourteenth amendment did not preclude Ohio from subjecting a foreign corporation to in personam jurisdiction in a case brought by nonresident of Ohio concerning matters unrelated to defendant's activities in Ohio. The defendant was a mining company incorporated in the Philippine Islands which at the time the cause of action arose were a possession of the United States. The defendant's mining operations were located in the Philippines and were completely halted by the Japanese during the Second World War. During the occupation the president, who was also the general manager and the principal stockholder, maintained an office in Ohio. From that office he "carried on in Ohio a continuous and systematic supervision of the necessarily limited wartime activities of the company. He there discharged his duties as president and general manager, both during the occupation of the company's properties by the Japanese and immediately thereafter." Perkins brought the actions to recover dividends and damages caused by the defendant's failure to issue her stock certificates.

Jurisdiction was sustained because the Court concluded that the operations of the mining company were sufficiently substantial and of such a nature to justify the suit. The holding in *Perkins* is that when "a corporation's activities in the forum are so 'continuous and systematic' . . . the corporation may in fact be said already to be 'present' there . . . ." *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406 (9th Cir. 1977). Nothing in either the logic or the facts of the case intimates that the holding would extend to a corporation which was no longer doing business within the state, continuous, systematic, or otherwise, merely because it once had a license to do business there. There are no facts presented by the plaintiffs to demonstrate that OPC's activities were continuous or systematic during the time when OPC was licensed to do business in Texas. A foreign corporation may desire a permit to do business yet not conduct activities which absent the permit would render them subject to jurisdiction for activities unrelated to its activities in the forum state. There certainly are no facts upon which the Court can support a conclusion that OPC's present activities are continuous or systematic. Indeed, the fact of withdrawal itself suggests that OPC's activities in Texas are not continuous.

The facts of *Perkins* also cast doubt on its applicability to this case. The defendant in *Perkins* was conducting all of the company's business at the time from Ohio. From the office in Ohio, the president

conducted his personal affairs and did many things on behalf of the company. He kept there office files of the company. He carried on there correspondence relating to the business of the company and to its employees. He drew and distributed there salary checks on behalf of the company, both in his own favor as president and in favor of two company secretaries who worked there with him. He maintained in Clermont County, Ohio, two active bank accounts carrying substantial balances of company funds. A bank in Hamilton County, Ohio, acted as transfer agent for the stock of the company. Sev-

eral director's meetings were held at his office or home in Clermont County. From that office he supervised policies dealing with the rehabilitation of the corporation's properties in the Philippines and he dispatched funds to cover purchases of machinery for such rehabilitation. *Perkins v. Benguet Mining Company, supra*, 342 U.S. at 448, 72 S.Ct. at 419. Accordingly, it is fair to say that Ohio was the mining company's principal place of business, albeit temporarily. Finally, the president was personally served in Ohio, which may have been the only place where the action could have been brought at the time.

One Court of Appeals had suggested that these "peculiar" facts cast doubt upon the validity of the precedent in light of *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), and *McGee v. International Life Ins. Co.*, 355 U.S. 220 (1958). *See L. D. Reeder Contractors of Ariz. v. Higgins Industries*, 265 F.2d 768, 775 (9th Cir. 1959). Several commentators have also noted that the decision is limited significantly by its facts.

[The *Perkins*] case was decided under and seems to fall clearly within the test of reasonableness, although the unavailability of a more convenient forum was a significant factor in the decision. . . Circumstances may exist in which a suit on a cause of action unrelated to activities within the forum would make it unreasonable and therefore unconstitutional to exercise jurisdiction over the defendant.

Goodrich & Scoles, Conflict of Laws § 76 at 1934 (9th ed. 1964).

It should be noted that . . . the facts in *Perkins* were highly unusual. When sued, the defendant had its main office in the forum. Furthermore, if not amendable to suit in Ohio, it is unlikely that the defendant would be subject to suit any place while the occupation of the Philippines continued. Thus *Perkins* is not strong support for the proposition that doing business may be a generally affiliating basis for general jurisdiction.

Weintraub, Commentary on the Conflict of Laws, 108–09 (1971). Another article suggests that "[t]he *Perkins* case should be regarded as a decision on its exceptional facts, not as a significant reaffirmation of obsolescing notions of general jurisdiction." Von Mehren & Trautman, Jurisdiction to Adjudicate: A Suggested Analysis, 79 Harv.L.Rev. 1121, 1144 (1961). Whether or not *Perkins* continues to be viable precedent, it affords no support for plaintiffs. Those cases which recently have cited *Perkins* have noted that it controls only when the defendant's activities are "continuous and systematic," and in this case even if OPC's activities ever were systematic, they have not been continuous. *See Schreiber v. Allis-Chalmers Corp.*, 448 F.Supp. 1079, 1087–89 (D.Kan.1978).

 Another fact exists which makes the exercise of jurisdiction clearly unreasonable. OBI was never licensed to do business in Texas, and it is that corporation which the plaintiffs allege was "involved" in the drilling operation. Whether or not the rule of *Cannon v. Cudahay Packing Co.*, 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634 (1925), "is no longer viable in jurisdictional analysis," *Energy Reserves Group, Inc. v. Superior Oil Co.*, 460 F.Supp. 483 (D.Kan.1978), there have been no facts presented by the plaintiffs which suggest that OPC has acted as OBI's agent in Texas or that their separate corporate existence should be ignored. The only facts which plaintiffs have shown the Court is that OBI is a wholly owned subsidiary, and that certain of OBI's officers also serve the parent, and that those officers receive their salary from the parent. The mere existence of a parent subsidiary relationship does not support the conclusion that a service on the parent constitutes service on the subsidiary. *See Walker v. Newgent*, 583 F.2d 163 (5th Cir. 1978); *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 420 (9th Cir. 1977); *Peterson v. U–Haul Co.*, 409 F.2d 1174, 1184–85 (8th Cir. 1969); *Turner v. Jack Tar Grand Bahama*, 353 F.2d 954 (5th Cir. 1965). In *Gentry v. Credit Plan Corp.*, 528 S.W.2d 571, 573 (Tex.1975), the Texas Supreme Court stated that:

A subsidiary corporation will not be regarded as the alter ego of its parent because of stock ownership, a duplication of some or all of the directors or officers, or an exercise of control that stock ownership gives to [directors].

The plaintiffs have not shown that OPC and OBI are not separate entities, and they have not carried their burden "to sort out those business relationships." *Product Promotions, Inc. v. Cousteau*, 495 F.2d 483, 493 (5th Cir. 1974). It requires stretching Article 2031b and the due process clause too far to sustain in personam jurisdiction in an action brought by Spanish citizens against an unlicensed foreign corporation in order to adjudicate the liability of its foreign subsidiary arising out of acts unrelated to any business transacted in the forum state merely because the parent once was authorized to do business in Texas.

Accordingly, for the reasons stated above, the Court hereby ORDERS:

Occidental Petroleum Corporation's Motion to Dismiss for lack of in personam jurisdiction is GRANTED.