**EQUITABLE PRODUCTION
CO., Appellant**

v.

**Esperanza CANALES–TREVIÑO, Individually and as Heir and Administrator of the Estate of Raynolfo Treviño, Jr., Deceased, Appellee.**

No. 04–03–00237–CV.

Court of Appeals of Texas,
San Antonio.

March 3, 2004.

Rehearing Overruled April 1, 2004.

⌖305(5)

W. Wendell Hall, Xavier Rodriguez, Fulbright & Jaworski L.L.P., San Antonio, John E. Cyr, Warren S. Huang, Fulbright & Jaworski L.L.P., Houston, for appellant.

William R. Edwards, John Blaise Gsanger, Marilyn J. Larsen, The Edwards Law Firm, L.L.P., Corpus Christi, Armando G. Barrera, Charles L. Barrera, Barrera & Barrera Law Firm, San Diego, David J. Dunn, Dunn, Weathered, Coffey, Rivera & Kasperitis, P.C., Corpus Christi, Jose Ramon Falcon, Falcon Law Office, San Diego, Michael M. De Shetler, The De Shetler Law Firm, Corpus Christi, for appellee.

Sitting: CATHERINE STONE, Justice, PAUL W. GREEN, Justice, SARAH B. DUNCAN, Justice.

## OPINION

Opinion by SARAH B. DUNCAN, Justice.

We are asked to decide whether the trial court correctly concluded that it may exercise general jurisdiction over Equitable Production, because it had "continuous and systematic" contacts with Texas, when Equitable's national headquarters and principal place of business were relocated from Texas to another state three months before suit was filed. We hold that the relocation, although a significant factor, is nonetheless merely one factor to consider in resolving the jurisdictional issue; and Equitable's contacts with Texas through the date suit was filed, although certainly diminished by the relocation, were nonetheless sufficiently continuous and systematic to support an exercise of general jurisdiction. We therefore affirm the trial court's order overruling Equitable's special appearance.

### FACTUAL AND PROCEDURAL BACKGROUND

On July 13, 1999, Raynolfo Treviño was killed in a trucking accident near Well No. KL 1996 in Floyd County, Kentucky. At the time, Treviño was working within the course and scope of his employment with Schlumberger Technology Corporation, a Texas corporation that had contracted to

perform services with Well No. KL 1996's owner and operator, a West Virginia corporation named Equitable Production Company. At the time of the accident, Equitable's national headquarters and principal place of business were in Houston, Texas. After the accident, however, Equitable merged its Gulf Coast division with Westport Resources in exchange for 49% of the stock in the merged entity. Following the merger, on April 7, 2000, Equitable Production closed its Houston office and moved its headquarters first to Alexandria, Virginia and later to Pittsburgh, Pennsylvania.

Three months after the closure of Equitable's Houston office, on July 7, 2000, Treviño's widow, Esperanza Canales–Treviño, filed suit against Equitable, as well as various Schlumberger entities, in the district court of Jim Wells County, Texas, where Treviño and Canales–Treviño had lived and where Treviño had been hired by Schlumberger. Between April 7, 2000, the date Equitable closed its Houston office, and July 7, 2000, the date suit was filed, Equitable's only contacts with the State of Texas were continuing its agreement with Schlumberger, maintaining one employee in Houston, Texas-an accountant named Mike Williams-whose "sole duty was to help with the accounting transition from Equitable to Westport," maintaining its license to do business and its registered agent for service of process in Texas, and entering or continuing document storage contracts with Texas companies.

Shortly after suit was filed, Equitable filed a special appearance contending that, at the time suit was filed, it did not have the necessary minimum contacts to support a Texas court's assertion of jurisdiction over it. The trial court concluded it had both general and specific jurisdiction over Equitable, overruled Equitable's special appearance, and later filed extensive findings of fact and conclusions of law. Equitable appealed.

## WAIVER

■ Canales–Treviño argues Equitable made a general appearance and thus waived its special appearance by "expressly request[ing] the trial court to enter an order on Equitable's motion to transfer venue almost a year prior to the final ruling on Equitable's special appearance." We disagree.

"If [an] objection to jurisdiction is overruled, the objecting party may thereafter appear generally for any purpose." Tex.R. Civ. P. 120a(4); cf. Underwood v. Bri–Ley Sales, Inc., No. 03–97–00333–CV, 1999 WL 76442, * 6 (Tex.App.-Austin, Feb.19, 1999, no pet.) (not designated for publication) ("hold[ing] that Bri–Ley did not waive its right to object to personal jurisdiction by seeking affirmative relief after the trial court initially overruled its objection to jurisdiction"). Here, the trial court unequivocally overruled Equitable's special appearance on the record during the special appearance hearing. This oral ruling was sufficient to preserve error under Texas Rule of Appellate Procedure 33.1(a)(2)(A) and sufficient to permit Equitable to pursue a written order reflecting the oral ruling denying its motion to transfer venue without making a general appearance. In light of Rule 120a(4), the fact that the trial court later conducted additional hearings is immaterial. Accordingly, we hold Equitable did not waive its right to complain on appeal that the trial court erred in overruling its special appearance.

## SPECIFIC JURISDICTION

■ Equitable argues the trial court erred in concluding it is authorized to exercise specific jurisdiction over Equitable because Canales–Treviño's claims do not

arise from or relate to Equitable's contacts with Texas. We agree.

■ The parties agree that "[f]or a court to exercise specific jurisdiction over a nonresident defendant, two requirements must be met: (1) the defendant's contacts with the forum must be purposeful, and (2) the cause of action must arise from or relate to those contacts." *American Type Culture Collection, Inc. v. Coleman,* 83 S.W.3d 801, 806 (Tex.2002), *cert. denied,* 537 U.S. 1191, 123 S.Ct. 1271, 154 L.Ed.2d 1025 (2003). Canales–Treviño argues that "Treviño's death has a substantial connection with the [agreement] that Equitable executed with Schlumberger, which is a contract that was negotiated, executed, paid, and supervised from Texas by Equitable." However, "[m]erely contracting with a Texas corporation does not satisfy the minimum contacts requirement." *Shell Compania Argentina de Petroleo, S.A. v. Reef Exploration, Inc.,* 84 S.W.3d 830, 837 (Tex.App.-Houston [1st Dist.] 2002, pet. denied). Rather, Canales–Treviño must establish that her claims against Equitable arise from or relate to the execution of that agreement. *See id.* And it is clear that Canales–Treviño's claims against Equitable arise not out of execution of the agreement but out of Equitable's alleged negligence in constructing, designing, maintaining, or operating the road at the accident site in Kentucky.[1] In these circumstances, a trial court is not authorized to exercise specific jurisdiction. *See, e.g., Kelly v. Syria Shell Petroleum Dev. B.V.,* 213 F.3d 841, 854–55 (5th Cir.), *cert. denied,* 531 U.S. 979, 121 S.Ct. 426, 148 L.Ed.2d 435 (2000) (rejecting plaintiff's argument that trial court was authorized to exercise specific jurisdiction based on defendant's execution of a contract with a Texas company to provide services in Texas, "because [the] claims do *not* arise out of those contacts" but "out of alleged tortious acts committed ... in Syria").

It is this nexus between the plaintiff's claims and the non-resident defendant's contacts with the forum state that distinguishes each of the cases relied upon by Canales–Treviño. *See Zac Smith & Co. v. Otis Elevator Co.,* 734 S.W.2d 662, 663–65 (Tex.1987), *cert. denied,* 484 U.S. 1063, 108 S.Ct. 1022, 98 L.Ed.2d 986 (1988); *Billingsley Parts & Equip., Inc. v. Vose,* 881 S.W.2d 165, 167–68 (Tex.App.-Houston [1st Dist.] 1994, writ denied); *Bissbort v. Wright Printing & Publ'g Co.,* 801 S.W.2d 588, 588–89 (Tex.App.-Fort Worth 1990, no writ); *National Truckers Serv., Inc. v. Aero Sys., Inc.,* 480 S.W.2d 455, 458–59 (Tex.Civ.App.-Fort Worth 1972, writ ref'd n.r.e.) (each holding trial court authorized to exercise specific jurisdiction because the plaintiff's claims against the non-resident defendant arose from or were related to the defendant's alleged breach of the contractual agreement with the plaintiff). That is not the case here. Because the required nexus is absent, we hold the trial court erred in concluding it was authorized to exercise specific jurisdiction over Equitable.

## GENERAL JURISDICTION

■ Equitable next argues "the trial court err[ed] in concluding that it has

---

1. In her Fifth Amended Petition, Canales–Treviño alleges that Ray Treviño was driving a truck that, together with its load, weighed in excess of twenty-five tons, "down a steep roadway on the side of a mountain when the vehicle left the roadway and went into a ravine.... The roadway wherein Ray Treviño was traveling was badly-designed, constructed and/or maintained and had exceedingly steep grades. Said roadway was on a well and/or mining site. Equitable was the operator, leasee [sic] and permit owner of said well and/or mining site. The subject roadway was built, designed, maintained, constructed and/or was under the supervision and/or control of Equitable."

general jurisdiction over Equitable when Equitable ceased doing business in Texas before this lawsuit was filed, precluding Equitable's contacts with Texas from being 'continuous and systematic' by definition and under Texas law." We disagree.

■ Recognizing that "[g]eneral jurisdiction is present when a defendant's contacts with a forum are 'continuous and systematic,'" *American Type Culture*, 83 S.W.3d at 807, Equitable argues that its contacts with Texas cannot be classified as "continuous and systematic," because it ceased to do business in Texas when it closed its Houston office on April 7, 2000. In support of its argument, Equitable relies upon the dictionary definition of "continuous" and the reliance on this definition in various opinions in contexts unrelated to jurisdiction. *See* BLACK'S LAW DICTIONARY 322 (6th ed. 1990); *State v. Kost*, 785 S.W.2d 936, 939–40 (Tex.App.-San Antonio 1990, pet. ref'd) (" 'Continuous' has been defined as 'uninterrupted, unbroken, not intermittent or occasional.' ") (quoting BLACK'S LAW DICTIONARY 291 (5th ed. 1979)); *Joaquin Indep. Sch. Dist. v. Fincher*, 510 S.W.2d 98, 103 (Tex.Civ. App.-Tyler 1974, writ ref'd n.r.e.) ("The word continuous is defined in Webster's New World Dictionary as 'going on or extending without interruption or break; unbroken; connected.' "); *Panhandle & Santa Fe Ry. Co. v. Hoffman*, 250 S.W. 246, 248 (Tex.Civ.App.-Amarillo 1923, writ dism'd w.o.j.) ("the word 'continuous,' in our opinion, is synonymous with the word 'unbroken' "). However, as Equitable recognizes, none of these cases involves personal jurisdiction; therefore, not surprisingly, none address the issue Equitable presents in this appeal. More importantly, Equitable's contacts with Texas were "continuous," within the quoted definition, after the relocation of its headquarters and until the time suit was filed, as evidenced by the continued presence of Equitable's employee Mike Williams in Texas. Indeed, the dictionary definition would appear to support the conclusion that Equitable's contacts with Texas after the relocation, although diminished in every way, were nonetheless "continuous and systematic."

Equitable also relies upon *Leonard v. USA Petroleum Corp.*, 829 F.Supp. 882 (S.D.Tex.1993), asserting that "[c]ourts in other jurisdictions (including at least one federal district court in Texas) have held that when a defendant ceases to do business in the forum state before suit is filed, the defendant's contacts with the forum state, by definition, are no longer 'continuous and systematic' as due process requires." We do not read *Leonard* so broadly.

*Leonard*, a petroleum trader residing in Houston, Texas, filed a breach of contract suit in Houston against USA Petroleum, a California corporation, and its sole shareholder, both of whom moved to dismiss for lack of personal jurisdiction. *See id.* at 885. In analyzing whether it was authorized to exercise general jurisdiction over USA Petroleum, the trial court framed the issue as "whether USA Petroleum voluntarily consented to jurisdiction in Texas courts after 1988 [when it ceased to maintain an office, employ people, or conduct business in Texas] *because it had registered to do business in Texas and appointed an agent for service of process in 1985.*" *Id.* at 886 (emphasis added). The court framed the general jurisdiction issue in this manner because Leonard did not argue that the court had "general jurisdiction over the defendants because of USA Petroleum's contacts with Texas; rather, he asserts that general jurisdiction is proper through USA Petroleum's registration." *Id.* Rejecting Leonard's argument, the court held that "registration to do business

and appointment of an agent for service of process, especially when done to fulfill state law requirements, are only factors in the jurisdictional equation," *id.* at 889; and they are factors that, standing alone, are insufficient to support the assertion of general jurisdiction. *Id.* We do not disagree with this holding. But the bottom line, for purposes of this appeal, is that, contrary to Equitable's argument, the court in *Leonard* neither reached nor decided the issue presented here. The remaining cases cited by Equitable are likewise less than definitive.

For instance, in *Aaacon Auto Transport, Inc. v. Barnes,* 603 F.Supp. 1347, 1351 (S.D.N.Y.1985), the court merely held that the plaintiff had failed to meet its burden to allege a prima facie case of jurisdiction because it failed to allege that the defendant "was 'doing business' in New York at the time the action was commenced." That is not the case here. In her Fifth Amended Original Petition, Canales–Treviño alleges Equitable "is a West Virginia corporation qualified to do business and doing business in Texas"; and she lists means by which Equitable continued to do business in Texas before and after the relocation.

In *Gutierrez v. Raymond Int'l, Inc.,* 484 F.Supp. 241 (S.D.Tex.1979), the court noted that "the fact of withdrawal itself suggests that OPC's activities in Texas are not continuous," *id.* at 252; however, the court did not hold that the fact of withdrawal, standing alone, precludes an assertion of general jurisdiction. Indeed, the concluding sentence of the court's opinion demonstrates that its dismissal rested on far firmer footing than the mere fact of withdrawal: "It requires stretching Article 2031b and the due process clause too far to sustain in personam jurisdiction in an action brought by Spanish citizens against an unlicensed foreign corporation in order to adjudicate the liability of its foreign subsidiary arising out of acts unrelated to any business transacted in the forum state merely because the parent once was authorized to do business in Texas." *Id.* at 253. This case, on the other hand, was brought by a Texas resident for the death of another Texas resident against a corporation that had its headquarters and principal place of business in Texas when the cause of action accrued and that, at the time suit was filed, was still registered to do business in Texas, still maintained an agent for service of process in Texas, and still maintained an office and an employee in Texas.

In *Serafini v. Superior Court,* 68 Cal. App.4th 70, 80 Cal.Rptr.2d 159, 165 (1998), the court stated that "[w]hen the corporation ceases to do business in the state, there is no longer any general jurisdiction" and held that the California courts did not have general jurisdiction over a non-resident individual defendant who "unequivocally ceased his activities as a director and officer of Computerpeople, Inc. before the service of process." *Id.* Again, however, that is not the case here; at the time suit was filed, Equitable had not "unequivocally ceased" its activities in Texas, as evidenced by its continued employment of accountant Mike Williams, continued maintenance of his office in Houston, Texas, and continued storage of its documents in Texas.

In *Keech v. Lapointe Mach. Tool Co.,* 200 N.J.Super. 177, 491 A.2d 10 (App.Div. 1985), the trial court denied the motion to dismiss filed by a non-resident manufacturer, who had unequivocally discontinued business in the United States some six years before the plaintiff's accident. *See id.* at 11–12. The appellate court reversed, holding that "[a] manufacturer may terminate its business connection with a state and thereby eliminate the risk of being sued there, except with respect to

causes of action arising from the business previously carried on in that state." *Id.* at 182, 491 A.2d 10. In support of this statement, the court cites section 48 of the second Restatement of Conflict of Laws. Section 48 states that "[a] state has power to exercise judicial jurisdiction over a foreign corporation which has done business in the state, but has ceased to do business there at the time when the action is brought, with respect to causes of action arising from the business done in the state." RESTATEMENT (SECOND) CONFLICT OF LAWS § 48 (1971). But, by its terms, section 48 is a positive statement regarding specific jurisdiction; it does not purport to prohibit the assertion of general jurisdiction when a corporation has ceased doing business in the forum state. On the other hand, comment a to section 48, also relied upon by the *Keech* Court, does purport to do so:

> It is reasonable that a corporation, even after its withdrawal from a state, should remain subject to the judicial jurisdiction of that state as to causes of action arising from the business it did there. A state's jurisdiction in such a case is limited to causes of action arising from the business done by the corporation within its territory; its jurisdiction does not extend to causes of action unrelated to this business.

*Id.* § 48 cmt. a. We believe the flaw in comment a is revealed by the reasoning in another case cited by Equitable, *Asset Allocation & Mgmt. Co. v. Western Employers Ins. Co.*, 892 F.2d 566 (7th Cir.1989).

In *Asset Allocation,* the court stated that "the Illinois courts ... insist that the business done by the defendant in Illinois ... continue up to the time of suit." *Id.* at 570. However; the court also recognized that "the decision to withdraw from a state is not equivalent to actual withdrawal"; thus, "[r]ather than causing an immediate cessation of business, [the defendant's] decision to withdraw merely inaugurated a gradual, albeit inexorable, decline." *Id.* The *Asset Allocation* court's view of the significance of withdrawal and relocation comports with the general rule that the court should consider all contacts with the forum state over a reasonable period of time, up to and including the date suit was filed. *See Schlobohm v. Schapiro,* 784 S.W.2d 355, 359 (Tex.1990) (stating that "the minimum contacts inquiry" "demands ... that all contacts be carefully investigated, compiled, sorted, and analyzed for proof of a pattern of continuing and systematic activity" and holding that the trial court was authorized to exercise general jurisdiction over nonresident defendant whose contacts with Texas were discontinued before claim accrued); *see also Alpine View Co. v. Atlas Copco AB,* 205 F.3d 208, 217–18 (5th Cir. 2000); *Shell Compania Argentina de Petroleo, S.A. v. Reef Exploration, Inc.,* 84 S.W.3d 830, 841 (Tex.App.-Houston [1st Dist.] 2002, pet. denied); *Preussag Aktiengesellschaft v. Coleman,* 16 S.W.3d 110, 126 (Tex.App.-Houston [1st Dist.] 2000, pet. dism'd w.o.j.) (all stating and applying the general rule). The treatment of withdrawal and relocation in *Asset Allocation* also furthers the fundamental principle underlying the Supreme Court's personal jurisdiction jurisprudence in the corporate context—"general fairness to the corporation"—as well as the Court's instruction to consider the jurisdiction issue on a case-by-case basis. *See Perkins v. Benguet Consol. Mining Co.,* 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952). In accordance with these authorities, we hold that Equitable's relocation of its corporate offices from Houston, Texas to Alexandria, Virginia three months before suit was filed is but one factor to consider in determining whether Equitable's contacts with Texas were sufficiently "continuous and systematic" to support

the trial court's assertion of general juris-diction.

The trial court's unchallenged findings of fact establish the following:

| | |
|---|---|
| 1986 | Equitable, a West Virginia corporation, leases storage space in Houston, Texas from Hays Information Management, Inc., a Texas corporation located in Houston |
| 1988–89 | Equitable applies for a certificate of authority, qualifies to do business in Texas, and appoints an agent in Texas for service of process |
| late 1989 | Equitable files with the Texas Secretary of State assumed name certificates announcing that it will do business in Texas under the assumed names of "Equitable Energy" and "Kentucky Hydrocarbon" |
| 1993 | Equitable leases additional storage space from Farren & Long Company, a division of Geodata Service, Inc., a Texas corporation |
| June 7, 1994 | After negotiations (which took place in part in Houston, Texas and in part in Pittsburgh, Pennsylvania) Equitable and Schlumberger, a Texas corporation, execute General Articles of Agreement |
| 1997 | Equitable's national headquarters and principal place of business are relocated to Houston, Texas; however, it maintained its offices and staff in Houston |
| September 1998 | Equitable's national headquarters are temporarily moved to Pittsburgh, Pennsylvania |
| 1988-2000 | Equitable's vice president and general manager of its Appalachian region travels to Houston, Texas at least five times to meet with Equitable's senior vice president to discuss budget preparation, profit improvement, eastern states acquisitions, and status of eastern region |
| March 1999-March 2000 | Equitable lists itself in the Southwestern Bell Greater Houston Texas White Pages with a Houston, Texas address and telephone number |
| June 1999 | Equitable's national headquarters and principal place of business are relocated to Houston, Texas when the chief executive officer of Equitable's parent corporation places Equitable's senior vice president in charge of all of Equitable's production and exploration operations, including those in Floyd County, Kentucky |
| July 13, 1999 | Treviño, a Texas resident who was hired in and expected to return to Schlumberger's facility in Alice, Texas is killed in an accident at Equitable's well in Floyd County, Kentucky, at which time Equitable has in its leased Houston offices approximately thirty employees, including its senior vice president; its drilling, reservoir, and production managers for the Gulf of Mexico; its in-house attorney; and geologists, engineers, and technical personnel |
| July 1999 | Equitable maintains its leases for storage space in Houston, Texas from Hays Information Management, Inc., a Texas corporation located in Houston |
| October 1999 | Equitable lists itself in the Southwestern Bell Greater Houston |
| October 2000 | Texas Yellow Pages with a Houston, Texas address and telephone number |
| 1999 | Equitable holds employee meetings and recruits employees in Texas; Equitable does business with Texas companies, including Reading & Bates Drilling Company, R.B. Falcon Drilling Company, Global Marine, and Global Industries |
| April 7, 2000 | Equitable merges its Gulf Coast division with Westport Resources in exchange for 49% of the stock in the merged entity and relocates its headquarters to Alexandria, Virginia but continues to lease office space and employ Mike Williams, whose sole duty was to help with the accounting transition from Equitable to Westport |
| June 28, 2000 | Dun & Bradstreet report shows Equitable having 25 of its 43 employees working at Equitable's leased office space in Houston, Texas |

July 7, 2000    Lawsuit filed by Esperanza Canales–Treviño in Jim Wells County, Texas

1986–Oct. 9; 2000    Equitable stores records from its eastern region in its Houston storage space

We hold that, under these circumstances, the trial court did not err in finding that Equitable's contacts with Texas were sufficiently continuous and systematic to support the exercise of general jurisdiction.

### FAIR PLAY AND SUBSTANTIAL JUSTICE

■ Finally, Equitable argues the trial court erred in finding that the assertion of jurisdiction over Equitable would comport with traditional notions of fair play and substantial justice. We again disagree.

■ "Once it has been determined that the nonresident defendant purposefully established minimum contacts with the forum state, the contacts are evaluated in light of other factors to determine whether the assertion of personal jurisdiction comports with fair play and substantial justice." *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 228 (Tex.1991). "These factors include (1) 'the burden on the defendant,' (2) the interests of the forum state in adjudicating the dispute, (3) 'the plaintiff's interest in obtaining convenient and effective relief,' (4) 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies,' and (5) 'the shared interest of the several States in furthering fundamental substantive social policies.'" *Id.* (quoting *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). "[W]hen the nonresident defendant has purposefully established minimum contacts with the forum state," "[o]nly in rare cases . . . will the exercise of jurisdiction not comport with fair play and substantial justice." *Guardian Royal* 815 S.W.2d at 231. Thus, the burden is on the defendant to "present a *compelling case* that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477, 105 S.Ct. 2174 (emphasis added); *Guardian Royal*, 815 S.W.2d at 231.

Equitable asserts it would be unduly burdened by a trial in Texas because virtually all of the witnesses to the accident reside in or around Kentucky. We do not find this assertion persuasive, however. In this context, the burden is no greater now than it was three months before suit was filed when Equitable was headquartered in Houston. Equitable also asserts the State of Texas does not have a strong interest in adjudicating a dispute arising from an accident that occurred outside the state. We again disagree. This suit was filed by a Texas resident for the death of her husband, also a Texan, who was working for a Texas company at the time of his work-related death. *See Huddy v. Fruehauf Corp.*, 953 F.2d 955, 958 (5th Cir.), *cert. denied*, 506 U.S. 828, 113 S.Ct. 89, 121 L.Ed.2d 52 (1992) (noting that "Texas has a strong commitment to protecting its residents"). Perhaps the most persuasive factor in this context, however, is the fourth—"the interstate judicial system's interest in obtaining the most efficient resolution of controversies." Since the Schlumberger entities have not challenged jurisdiction, this lawsuit will be tried in Texas; the only question is whether it will also be tried in Kentucky. That would be highly inefficient, if not ludicrous. That level of inefficiency—balanced against the

relative burdens on Equitable and Canales–Treviño to try this case in Kentucky—lead us to conclude that Equitable has not met its burden to " 'present a *compelling case* that the presence of some other considerations would render jurisdiction unreasonable.' "

## CONCLUSION

Equitable's relocation of its corporate headquarters three months before suit was filed is but one factor in deciding whether a Texas court may assert general jurisdiction over Equitable. Considering all of Equitable's contacts with Texas, up to and including the date suit was filed, we hold the trial court did not err in concluding Equitable's contacts with Texas are sufficient to support the assertion of general jurisdiction. And Equitable has not met its burden to present a compelling case that the assertion of jurisdiction by a Texas court would otherwise be unreasonable. We therefore affirm the trial court's order overruling Equitable's special appearance.