

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-19-00757-CV

**FEDEX CORPORATION** and FedEx Corporate Services, Inc.,
Appellants

v.

Michelle **CONTRERAS**, Individually and as Representative of the Estate of Christopher
Talamantez, II, Deceased; Krystal Saldana as Next Friend of C.M.T., II and J.T., Minors;
Victoria Campos as Next Friend of D.C., a Minor; Christopher Talamantez, Sr.; Aurelio
Fernando Perez, Individually and as Representative of the Estate of Christian Adam Vasquez,
Deceased; and Alexis Sanchez, Individually, as Representative of the Estate of Christian
Vasquez, Deceased and as Next Friend of C.V., Jr., a Minor,
Appellees

From the 225th Judicial District Court, Bexar County, Texas
Trial Court No. 2019-CI-22752
Honorable Mary Lou Alvarez, Judge Presiding

Opinion by:    Beth Watkins, Justice

Sitting:       Sandee Bryan Marion, Chief Justice
               Patricia O. Alvarez, Justice
               Beth Watkins, Justice

Delivered and Filed: August 19, 2020

REVERSED AND RENDERED

Appellants FedEx Corporation ("Corporation") and FedEx Corporate Services, Inc.

("Services") appeal the trial court's order denying their special appearances. We reverse the trial

court's order and render judgment dismissing appellees' claims against appellants for lack of

personal jurisdiction.

**BACKGROUND**

On January 10, 2018, Christopher Talamantez, II and Christian Vasquez died when a tractor-trailer rear-ended their vehicle on I-35 in San Antonio. The tractor-trailer belonged to FedEx Freight, Inc. ("Freight"), and was driven by a Freight employee, Francisco Gutierrez, who is a resident of Webb County, Texas. Freight is incorporated and maintains its principal place of business in Arkansas. It is a wholly owned subsidiary of appellant Corporation, which is incorporated in Delaware and has its principal place of business in Tennessee.

At the time of the collision, Gutierrez's tractor-trailer was equipped with a PeopleNet system that monitored his driving habits. Services, which is incorporated in Delaware and has its principal place of business in Tennessee, negotiated and executed the contract that allowed the installation of the PeopleNet system on Freight's tractor-trailers.

Shortly after the collision, Talamantez's mother, father, and minor children (collectively, "Contreras") sued Gutierrez, Freight, and Corporation in Webb County District Court. Vasquez's father, widow, and minor child (collectively, "the Perez and Sanchez intervenors") intervened in that lawsuit. Gutierrez, Freight, and Corporation all entered general appearances and participated in discovery in the Webb County case. In December of 2018, Contreras and the Perez and Sanchez intervenors nonsuited the Webb County case and refiled their petitions in Bexar County District Court. In the Bexar County lawsuit, Contreras alleged that the collision occurred because Gutierrez used his cell phone while he was driving in "violation of FedEx safety policies and procedures." She also alleged Gutierrez received "multiple warnings through the PeopleNet system installed on his truck of imminent front end collisions, speeding and exceeding his hours of service."

Freight and Gutierrez both filed an original answer in the Bexar County lawsuit, but Corporation did not. On January 7, 2019, Corporation filed a special appearance, arguing it was not a resident of Texas, did not have minimum contacts with Texas, and the trial court's exercise

of jurisdiction over it would deprive it of due process. Corporation contended that Contreras "fail[e]d to specify a single act—tortious or otherwise—that [Corporation], as opposed to [Freight], performed within the State of Texas." It further asserted, "There also exist no contacts between [Corporation] and the State of Texas that are 'substantially connected to the litigation's operative facts.'" The special appearance was supported by an affidavit from Thomas F. Mullady, Corporation's manager of corporate compensation and designated corporate representative. Mullady averred that Corporation is incorporated in Delaware, maintains its principal place of business in Tennessee, "does not employ any personnel in Texas, does not have any offices located in Texas, and does not own any real or personal property in Texas," and "does not conduct business in Texas." Mullady also averred that Corporation "did not own, maintain, schedule, or operate the truck driven by Francisco Gutierrez on or about January 10, 2018," "does not own, maintain, schedule or operate any tractors or trailers," "did not recruit, train, hire, qualify, supervise, schedule, or employ Francisco Gutierrez" or any other commercial drivers and "does not establish or enforce the safety standards for [Freight] drivers."

After Corporation filed its special appearance, Contreras, the Perez and Sanchez intervenors, Gutierrez, and Freight agreed to incorporate the parties' discovery from the Webb County lawsuit "as if it was conducted in this cause in Bexar County." This discovery included Mullady's deposition, in which he gave testimony that was consistent with his affidavit in support of Corporation's special appearance. The Webb County discovery also included the deposition of Freight's safety advisor, Brian Cash, who testified that Freight, not Corporation or Services, is the "operator arm" that "owns the trucks, the trailers, [and] employs the drivers," that the safety department at Freight does not report to Corporation or Services, and that neither Corporation nor Services has direct access to the safety records of Freight's drivers.

Corporation initially set a hearing on its special appearance for June 27, 2019, and then reset the hearing for July 8. Although the trial court heard other matters in this case on July 8, it did not hear Corporation's special appearance that day.

On August 2, 2019, Contreras and the Perez and Sanchez intervenors amended their petitions to add appellant Services as a defendant. Like Corporation, Services filed a special appearance arguing it was not a resident of Texas, did not have minimum contacts with Texas, and the trial court's exercise of jurisdiction over it would deprive it of due process. While it conceded it "employs personnel and maintains offices in Texas," it claimed those "employees and offices are not substantially connected to the operative facts of this litigation." Services's special appearance was supported by an affidavit from its vice president of human resources, Chris Winton. Winton's affidavit stated, inter alia, that Services is incorporated in Delaware, maintains its principal place of business in Tennessee, "does not own, maintain, schedule or operate any tractors or trailers," "did not recruit, train, hire, qualify, supervise, schedule, or employ Defendant Francisco Gutierrez" or any other commercial drivers, and "does not select, implement, or monitor the safety information technology used by [Freight]" or "train [Freight's] personnel in the use of any safety information technology or enforce [Freight's] procedures related to safety information technology." Winton also averred, "No employees of [Services] in Texas perform functions other than call center, customer service, and sales functions, or administrative functions in support of those functions."

On August 29, 2019, Contreras filed a motion to compel jurisdictional discovery from Corporation, but not Services. She set the hearing on that motion for October 10, 2019. Corporation and Services then set the hearing on their special appearances for the same day. On October 8, 2019, Contreras filed motions to compel jurisdictional discovery from Corporation and Services, along with a verified motion for continuance and alternative request to stay her responses to the

special appearances. On October 9, 2019, Contreras filed a second amended petition, which asserted new jurisdictional allegations against Corporation and Services. Contreras's second amended petition repeated her earlier allegations that the accident occurred because Gutierrez used his cell phone while he was driving and ignored warnings from the PeopleNet system.

Contreras did not file a written response to either Corporation's or Services's special appearances. At the October 10 hearing, she announced "not ready" on the special appearances because she contended Corporation and Services had not complied with her requests for jurisdictional discovery. She also pointed out that she had requested either a continuance or a stay for additional time to respond to the special appearances. She then offered Mullady's and Cash's depositions, the PeopleNet contract executed by Services, and Corporation's registration with the Texas Secretary of State as "demonstrative" jurisdictional evidence. Corporation and Services objected to Contreras's second amended petition because they contended the new jurisdictional allegations operated as a surprise. The trial court denied Contreras's not-ready announcement and motions for continuance, and it admitted her demonstratives into evidence over Corporation's and Services's objections. It also overruled the objections to Contreras's second amended petition and treated it as her live pleading.

On October 22, 2019, the trial court signed an order denying Corporation's and Services's special appearances. In a separate order, however, it granted Contreras's August 29 motion to compel Corporation to produce jurisdictional discovery.[1] Corporation and Services then filed a notice of appeal. Neither Gutierrez nor Freight is a party to this appeal, and appellees' claims against them remain pending in the trial court.

---

[1] Because Contreras's October 8 motions to compel were filed less than three days before the hearing, the trial court concluded the August 29 motion directed at Corporation was "the only motion to compel that's set for hearing today." *See* TEX. R. CIV. P. 21(b). No party complains of this ruling on appeal.

**ANALYSIS**

Corporation and Services argue the trial court erred by denying their special appearances because the allegations and evidence do not establish that they are subject to personal jurisdiction in Texas. Contreras responds that her jurisdictional allegations and evidence show Texas can properly exercise specific jurisdiction over both Corporation and Services and general jurisdiction over Corporation. The Perez and Sanchez intervenors did not file a brief, but the Sanchez intervenors filed a letter adopting Contreras's positions on appeal.

### *Contreras's Second Amended Petition*

As a threshold matter, we must decide which version of Contreras's petition controls our jurisdictional analysis. Corporation and Services contend the trial court abused its discretion by considering Contreras's second amended petition during the special appearance hearing "because the Second Amended Petition constituted a surprise in violation of Texas Rule of Civil Procedure 63." Rule 63 provides, inter alia, that "[p]arties may amend their pleadings . . . at such time as not to operate as a surprise to the opposite party." TEX. R. CIV. P. 63. A trial court has no discretion to deny a pleading amendment "unless: (1) the opposing party presents evidence of surprise or prejudice; or (2) the amendment is prejudicial on its face . . . and the opposing party objects to the amendment." *Ginn v. NCI Bldg. Sys., Inc.*, 472 S.W.3d 802, 838 (Tex. App.—Houston [1st Dist.] 2015, no pet.). We "apply a liberal interpretation in determining whether a trial court granted leave to late-file an amended pleading." *Yeske v. Piazza Del Arte, Inc.*, 513 S.W.3d 652, 671 (Tex. App.—Houston [14th Dist.] 2016, no pet.).

While Corporation and Services claim they were surprised by the "new jurisdictional allegations" in Contreras's second amended petition, they do not contend that they presented evidence of surprise in the trial court. We conclude Corporation and Services have not shown the trial court behaved arbitrarily or unreasonably by treating Contreras's second amended petition as

her live pleading during the special appearance hearing. *See Ginn*, 472 S.W.3d at 838. As a result, we will focus our analysis on the jurisdictional allegations in Contreras's second amended petition.

### Personal Jurisdiction

*Standard of Review*

We review a trial court's ruling on a special appearance de novo. *Searcy v. Parex Res., Inc.*, 496 S.W.3d 58, 66 (Tex. 2016). "The plaintiff bears the initial burden of pleading allegations that suffice to permit a court's exercise of personal jurisdiction over the nonresident defendant." *Id.* If the plaintiff's allegations are sufficient, the burden shifts to the defendant to negate all bases of personal jurisdiction alleged by the plaintiff. *Id.* However, if the plaintiff does not plead facts that are sufficient to bring the defendant within reach of the Texas long-arm statute, "the defendant need only prove that it does not live in Texas to negate jurisdiction." *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658–59 (Tex. 2010). In considering whether the plaintiff met her initial burden, we may consider both her petition and her response to the special appearance. *See Camac v. Dontos*, 390 S.W.3d 398, 405 (Tex. App.—Dallas 2012, no pet.). Where, as here, the trial court does not issue findings of fact and conclusions of law, we imply all findings of fact that are necessary to support the trial court's ruling and that are supported by the evidence. *Kelly*, 301 S.W.3d at 657.

*Personal Jurisdiction Generally*

A personal jurisdiction analysis requires an examination of both state and federal law. *Searcy*, 496 S.W.3d at 66. The broad language of the Texas long-arm statute permits the trial court's jurisdiction to "reach as far as the federal constitutional requirements of due process will allow." *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex. 2007) (internal quotation marks omitted); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 17.042. However, allegations that suffice under the Texas long-arm statute—for example, an assertion that the

defendant committed a tort in Texas—do not necessarily satisfy constitutional due process requirements. *See Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 788 (Tex. 2005). To satisfy those requirements, the plaintiff must also allege facts showing: (1) the defendant has established "minimum contacts" with Texas; and (2) Texas's assertion of jurisdiction would not "offend traditional notions of fair play and substantial justice." *Searcy*, 496 S.W.3d at 66 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

"A defendant establishes minimum contacts with a state when it purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 338 (Tex. 2009) (internal quotation marks omitted). The defendant's contacts with Texas must support the conclusion that it "could reasonably anticipate being subject to the jurisdiction of the Texas court system." *Haddad v ISI Automation Int'l, Inc.*, No. 04-09-00562-CV, 2010 WL 1708275, at *3 (Tex. App.—San Antonio Apr. 28, 2010, no pet.) (mem. op.). We consider only the defendant's contacts with Texas itself, not other parties' contacts with Texas or the defendant's contacts with persons who live in Texas. *Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 561 (Tex. 2018). We must also assess each defendant's contacts with Texas individually. *PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 172 (Tex. 2007). "The purpose of the minimum-contacts analysis is to protect the defendant from being haled into court when its relationship with Texas is too attenuated to support jurisdiction." *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002).

A defendant can attack a plaintiff's jurisdictional allegations on either a factual or a legal basis:

> Factually, the defendant can present evidence that it has no contacts with Texas, effectively disproving the plaintiff's allegations. The plaintiff can then respond with its own evidence that affirms its allegations, and it risks dismissal of its lawsuit

if it cannot present the trial court with evidence establishing personal jurisdiction. Legally, the defendant can show that even if the plaintiff's alleged facts are true, the evidence is legally insufficient to establish jurisdiction; the defendant's contacts with Texas fall short of purposeful availment; for specific jurisdiction, that the claims do not arise from the contacts; or that traditional notions of fair play and substantial justice are offended by the exercise of jurisdiction.

*Kelly*, 301 S.W.3d at 659. Federal due process jurisprudence divides the minimum contacts analysis into "two strains of personal jurisdiction: specific and general." *Searcy*, 496 S.W.3d at 67. We will examine each analysis separately.

*Specific Jurisdiction—Applicable Law*

In a specific jurisdiction analysis, we focus our attention on the relationship between the defendant, the forum, and the litigation. *Moki Mac*, 221 S.W.3d at 575–76. "Specific jurisdiction arises when (1) the defendant purposefully avails itself of conducting activities in the forum state, and (2) the cause of action arises from or is related to those contacts or activities." *Kelly*, 301 S.W.3d at 658 (internal quotation marks and alterations omitted). A cause of action arises from or is related to a nonresident's forum contacts if there is "a substantial connection between those contacts and the operative facts of the litigation." *Moki Mac*, 221 S.W.3d at 585.

*Specific Jurisdiction—Application*

*Can Corporation be "fused" with Freight for jurisdictional purposes?*

In her brief, Contreras argues that Corporation "is more than a passive holding company" and that its control over Freight is so extensive they should be fused for jurisdictional purposes under an alter ego theory. "To 'fuse' a parent company and its subsidiary for jurisdictional purposes, a plaintiff must prove the parent controls the internal business operations and affairs of the subsidiary to the extent that the two entities effectively cease to be separate." *PT Intermediate Holding, Inc. v. LMS Consulting, LLC*, No. 04-14-00827-CV, 2015 WL 5438964, at *3 (Tex. App.—San Antonio Sept. 16, 2015, pet. denied) (mem. op.). "[T]he degree of control the parent

exercises must be greater than that normally associated with common ownership and directorship; the evidence must show that the two entities cease to be separate so that the corporate fiction should be disregarded to prevent fraud or injustice." *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 799 (Tex. 2002).

"Because the plaintiff defines the scope and nature of the lawsuit," a defendant has no duty to negate jurisdictional allegations that are not raised in the plaintiff's petition. *Kelly*, 301 S.W.3d at 658. Here, while Contreras argues in this court that Corporation and Freight can be fused for jurisdictional purposes, she did not plead or prove this assertion in the trial court. Contreras's second amended petition alleged that Corporation "participates in the management of" Freight, but it did not contend Corporation's control of Freight is so extensive that the two do not constitute separate and distinct corporate entities. *See BMC Software*, 83 S.W.3d at 799. Nor did Contreras allege, in either the trial court or this court, that Corporation and Freight are so intertwined "that the corporate fiction should be disregarded to prevent fraud or injustice." *Id.* We hold Contreras therefore waived her argument that Corporation and Freight should be fused for jurisdictional purposes. TEX. R. APP. P. 33.1; *see Davis-Lynch, Inc. v. Asgard Techs., LLC*, 472 S.W.3d 50, 69 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (refusing to consider alter ego theory raised for the first time on appeal).

### *Contreras's Jurisdictional Facts*

In the "jurisdictional facts" paragraphs of her second amended petition, Contreras alleged that Corporation is Freight's parent company and "participates in the management of" Freight; "through its annual reports claims that it was involved in the implantation [*sic*] of the safety features on the [Freight] trucks, including the truck involved in this wreck"; "engages [Freight] drivers in safety competitions sponsored by the chairman of [Corporation] designed to engage [Corporation] in the safety of the subsidiary drivers, including those drivers driving for [Freight]";

and "claims that it promotes the safety of all of the subsidiary employees, including the drivers of [Freight] and the driver involved in this wreck, and touts its involvement in its annual reports and other publications." These facts, even if true, would apply to every jurisdiction where Freight operates trucks. Contreras did not plead any facts showing that by engaging in these activities, Corporation sought some benefit, advantage, or profit by availing itself of Texas specifically. *See Old Republic*, 549 S.W.3d at 561. Nor did she otherwise explain why those activities "justify a conclusion that [Corporation] could reasonably anticipate being called into a Texas court." *See Retamco*, 278 S.W.3d at 338. As a result, she did not plead that these activities support a conclusion that Corporation "purposefully avail[ed] itself of the privilege of" conducting activities in Texas. *See Michiana Easy Livin'*, 168 S.W.3d at 784.

With regard to Services, Contreras alleged that it "acts as the support agent for all of the FedEx subsidiaries including [Freight]"; "provides contract support, human resources support, managerial support, legal support and other 'backroom' support," including "administration of the FedEx website, which directs customers, including those in the State of Texas, to the services provided by" Corporation's subsidiaries; and "negotiated and executed, on behalf of all of the FedEx subsidiaries, including [Freight], the contract for the [PeopleNet] safety equipment on the trucks, including the truck involved in this wreck." As was the case with Contreras's allegations against Corporation, these facts would apply to every jurisdiction where Freight operates trucks and therefore do not show that Services sought any benefit or advantage by operating in Texas. *See Old Republic*, 549 S.W.3d at 561. As a result, these allegations do not support the exercise of specific jurisdiction over Services. *See id.*

### Contreras's Tort Allegations

Contreras also alleged that Corporation and Services committed negligent acts that led to the collision at issue here, including negligence in: (a) hiring Gutierrez; (b) entrusting a vehicle to

him; (c) qualifying him as a driver; (d) training and supervising him; (e) retaining him; (f) undertaking their business; (g) establishing, implementing, and enforcing safety policies and procedures; and (h) "providing unsafe equipment and/or failing to properly utilize the safety equipment available on the FedEx trucks." *See* TEX. CIV. PRAC. & REM. CODE § 17.042(2) (a nonresident "does business" in Texas for purposes of the long-arm statute if it "commits a tort in whole or in part in this state"). However, "[t]he record contains no evidence" that either Corporation or Services—as opposed to Freight—initiated these alleged contacts with Texas. *Old Republic*, 549 S.W.3d at 561; *see also PHC-Minden*, 235 S.W.3d at 165 ("[M]ere relatedness [of corporate entities] is an insufficient basis on which to confer jurisdiction.").

In their special appearances, Corporation and Services alleged and presented evidence that they did not hire, train, supervise, or employ Gutierrez or any other drivers; do not own, maintain, schedule, or operate any tractors or trailers; and do not administer or enforce Freight's safety policies. *See Kelly*, 301 S.W.3d at 659 (defendant can negate jurisdiction by "present[ing] evidence that it has no contacts with Texas, effectively disproving the plaintiff's allegations"). While Contreras did not file a written response to those contentions, the evidence she presented during the special appearance hearing—specifically, Mullady's and Cash's depositions—showed that Freight, not Corporation or Services, employed Gutierrez and owned the tractor-trailer he was driving the night of the collision. Moreover, Cash testified that Freight's safety department does not "report to" either Corporation or Services and that neither Corporation nor Services have access to the PeopleNet data of Freight's drivers. *See id.* (plaintiff risks dismissal "if it cannot present the trial court with evidence establishing personal jurisdiction"); *see also Camac*, 390 S.W.3d at 405 ("The plaintiff's pleadings and its response to the special appearance may be considered in determining whether the plaintiff satisfied its [initial pleading] burden."). While Contreras contends in her brief that "[Corporation] is ultimately responsible for ensuring that FedEx-wide

drivers are driving safely and are in compliance with all company policies and legal regulations," the record citations upon which she relies for this proposition do not support it. Based on the jurisdictional evidence that was before the trial court, we conclude Contreras's tort allegations were not sufficient to establish specific jurisdiction over Corporation and Services. *See Old Republic*, 549 S.W.3d at 561; *PHC-Minden*, 235 S.W.3d at 165; *see also Kelly*, 301 S.W.3d at 658 n.4 ("While the pleadings are essential to frame the jurisdictional dispute, they are not dispositive" and can be undermined by evidence) (citing Tex. R. Civ. P. 120a).

Finally, Contreras alleged that Corporation, Services, and Freight are all responsible for Gutierrez's actions under the doctrine of respondeat superior. The actions of a corporate agent can be attributed to its nonresident principal for jurisdictional purposes. *See Horizon Shipbuilding, Inc. v. BLyn II Holding, LLC*, 324 S.W.3d 840, 848 (Tex. App.—Houston [14th Dist.] 2010, no pet.) As noted above, however, the jurisdictional evidence Contreras presented to the trial court shows that neither Corporation nor Services employed Gutierrez or owned the truck involved in this collision. *See Camac*, 390 S.W.3d at 405. Because Contreras's own evidence "undermines the [respondeat superior] allegations in the pleadings," we conclude those allegations do not support a conclusion that Corporation or Services are amenable to suit in Texas. *See Kelly*, 301 S.W.3d at 658 n.4.

Based on the foregoing, we conclude the trial court erred by concluding it could properly exercise specific jurisdiction over either Corporation or Services. *See Old Republic*, 549 S.W.3d at 561; *Moki Mac*, 221 S.W.3d at 588. We must therefore examine whether the record supports the trial court's exercise of general jurisdiction.

*General Jurisdiction—Applicable Law*

"[T]he general jurisdiction analysis entails a high bar." *Searcy*, 496 S.W.3d at 72. To support the exercise of general jurisdiction, the plaintiff must show the out-of-state defendant's

contacts with the forum state are "so continuous and systematic as to render [the defendant] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014) (internal quotation marks omitted). The paradigm locations where a corporation is at home are its place of incorporation and principal place of business. *Id.* at 137. While a corporation may be at home in other locations "in an exceptional case,"[2] the general jurisdiction inquiry "calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide" because "[a] corporation that operates in many places can scarcely be deemed at home in all of them." *Id.* at 139 n.19, 20.

"[T]he ties between the litigation itself and the forum state are irrelevant to the question of whether general jurisdiction exists." *Searcy*, 496 S.W.3d at 72. "[G]eneral jurisdiction relies on the defendant itself being tied up—almost entangled in a web—with the forum state." *Id.* Even if a defendant maintains continuous and systematic contacts with the forum state, those contacts "are insufficient to confer general jurisdiction if they fail to rise to the level of rendering [the] defendant *essentially at home* in the forum state." *Old Republic*, 549 S.W.3d at 565 (emphasis in original, internal quotation marks omitted); *see also Baldaramos v. Metamorphosis Consulting, LLC*, No. 04-19-00356-CV, 2019 WL 6719033, at *4 (Tex. App.—San Antonio Dec. 11, 2019, no pet.). The Texas Supreme Court has explained that because a general jurisdiction analysis is "dispute-blind," a reviewing court can properly frame this inquiry by "construct[ing] a hypothetical claim without any forum connection"—i.e., by considering whether the defendant's Texas contacts are so pervasive that it could properly be haled into a Texas court based on an out-of-state plaintiff's complaints about actions that occurred outside of Texas. *See PHC-Minden*, 235 S.W.3d at 169.

---

[2] As an example of an "exceptional case," the U.S. Supreme Court has twice pointed to *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437 (1952), a case in which a Filipino corporation temporarily moved its operations to Ohio during World War II. *See Daimler*, 571 U.S. at 129–30; *see also BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017).

*General Jurisdiction—Application*

Contreras's live petition contains allegations that appear to be "dispute-blind" with regard to both Corporation and Services. *See id.* In her brief, however, she limits her general jurisdiction arguments to Corporation alone. In the interests of justice, we will consider whether the trial court could properly exercise general jurisdiction over either Corporation or Services.

It is undisputed that both Corporation and Services are incorporated in Delaware and maintain their principal places of business in Tennessee. As a result, Contreras was required to plead allegations that, if true, would show this is an exceptional case that justifies the exercise of general jurisdiction outside of those traditional "all-purpose" forums. *Daimler*, 571 U.S. at 139 n.19. To do so, she had to allege that their contacts with Texas are so substantial "'as to justify suit against it on causes of action arising from dealings entirely distinct from'" their activities in Texas. *Searcy*, 496 S.W.3d at 71 (quoting *Int'l Shoe*, 326 U.S. at 318); *see also PHC-Minden*, 235 S.W.3d at 169.

The "dispute-blind" allegations in Contreras's second amended petition are based solely on the premise that Corporation and Services conduct business in Texas. She contended, for example, that Corporation is Freight's parent company, "participates" in Freight's management, and conducts business in Texas through Freight. She also alleged that Corporation and Services maintain a website that "directs customers, including those in the state of Texas" to its subsidiaries, that Services "acts as the support agent for" Freight's operations in Texas, and that Service negotiated and executed the PeopleNet contract on Freight's behalf. Finally, she alleged that Corporation "is a registered foreign corporation pursuant to Section 9 of the Texas Business Organizations Code" and therefore "has all of the rights and obligations of a domestic corporation . . . including the right to sue or be sued in Texas."

As explained above, Contreras waived her argument that Corporation and Freight should be "fused" for jurisdictional purposes by failing to raise it in the trial court. *See* TEX. R. APP. P. 33.1; *Davis-Lynch*, 472 S.W.3d at 69. Furthermore, even if we accept the remaining allegations in her petition as true, the United States Supreme Court has specifically refused to "approve the exercise of general jurisdiction in every State in which a corporation engages in a substantial, continuous, and systematic course of business" and held that such a jurisdictional analysis is "unacceptably grasping." *Daimler*, 571 U.S. at 138 (internal quotation marks omitted). The Court also rejected the notion that corporations are subject to general jurisdiction wherever "they have an in-state subsidiary or affiliate," and concluded that large national and multi-national businesses are permitted "to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *Id.* at 136, 139 (internal quotation marks omitted).

Under the U.S. Supreme Court's analysis in *Daimler*, Contreras's assertions that Corporation and Services conduct business in Texas do not support a conclusion that this is an "exceptional case" that renders them essentially at home in Texas. *See id.*; *see also BNSF Ry. Co.*, 137 S. Ct. at 1559 (holding a Montana court could not exercise general jurisdiction over corporation with "over 2,000 miles of railroad track and more than 2,000 employees in Montana"); *see also Searcy*, 496 S.W.3d at 73 (adopting *Daimler*'s holding that "continuous and systematic contacts, taken alone, are not enough to confer general jurisdiction over a defendant"). Those allegations therefore were not sufficient to support the trial court's exercise of general jurisdiction over either Corporation or Services. *See BNSF Ry. Co.*, 137 S. Ct. at 1559.

Additionally, while an entity's registration with the Texas Secretary of State and appointment of an agent for service of process is relevant to a minimum contacts analysis,[3] we join our sister courts in declining to hold that a corporation automatically subjects itself to general jurisdiction in Texas by registering to do business or appointing an agent for service of process here. *See Golden Peanut Co., LLC v. Give & Go Prepared Foods Corp.*, No. 05-18-00626-CV, 2019 WL 2098473, at *6 (Tex. App.—Dallas May 14, 2019, no pet.) (mem. op.); *Salgado v. OmniSource Corp.*, No. 01-16-00943-CV, 2017 WL 4508085, at *5 (Tex. App.—Houston [1st Dist.] Oct. 10, 2017, no pet.) (mem. op.). Finally, while Contreras cites authority holding that a non-resident defendant's operation of an interactive website can amount to purposeful availment, those cases predate *Daimler*'s 2014 clarification of the proper scope of general jurisdiction. *See Waterman Steamship Corp. v. Ruiz*, 355 S.W.3d 387, 411 (Tex. App.—Houston [1st Dist.] 2011, pet. denied); *Quartz Castle, Inc. v. Jade Consol. Mgmt., Inc.*, No. 09-10-00266-CV, 2010 WL 5232991, at *6 (Tex. App.—Beaumont Dec. 16, 2010, no pet.) (mem. op.).

For these reasons, the trial court erred by concluding it could properly exercise either general or specific jurisdiction over Corporation and Services. *See Daimler*, 571 U.S. at 138; *Moki Mac*, 221 S.W.3d at 588. We therefore reverse the trial court's order denying Corporation's and Services's special appearances.

### *Remand for Development of Additional Jurisdictional Evidence*

Contreras argues that if we reverse the trial court's order denying Corporation's and Services's special appearances, we should remand this case in the interest of justice to allow her

---

[3] In *Equitable Production Co. v. Canales-Treviño*, 136 S.W.3d 235, 243 (Tex. App.—San Antonio 2004, pet. denied), we considered evidence showing the defendant "applie[d] for a certificate of authority, qualifie[d] to do business in Texas, and appoint[ed] an agent in Texas for service of process" as part of the general jurisdiction analysis. However, the evidence in *Equitable Production Co.* also showed that the defendant maintained its national headquarters in Texas during a time that was relevant to the lawsuit. *Id.*

to further develop the jurisdictional evidence. She argues that "the trial court believed that [additional jurisdictional discovery] was warranted because it granted [her] motion to compel."

We note, however, that the trial court denied Contreras's not ready announcement and her motions for continuance, and Contreras has not claimed that it abused its discretion by doing so. *See BMC Software*, 83 S.W.3d at 800–01 (order denying a motion for continuance will not be disturbed on appeal unless the trial court committed a clear abuse of discretion). Nevertheless, her request for a remand essentially asks us to grant her the continuance the trial court explicitly denied. We note, too, that although the trial court granted Contreras's motion to compel evidence from Corporation, it did not consider her motion to compel evidence from Services because she filed it less than three days before the hearing. *See id.* Additionally, although Corporation filed its special appearance on January 7, 2019 and initially set its special appearance hearing for June 27, 2019, Contreras did not file her first motion to compel it to produce jurisdictional discovery until August 29, 2019. *Cf. id.* Finally, because the claims Contreras, the Perez intervenors, and the Sanchez intervenors asserted against Freight and Gutierrez remain pending in the trial court, our conclusion that the trial court lacks personal jurisdiction over Corporation and Services will not wholly deprive them of an opportunity to seek redress for Talamantez's and Vasquez's deaths. Under these circumstances, we conclude Contreras has not shown that the interests of justice require a remand for discovery of additional jurisdictional evidence.

Contreras also contends that "recent filings" in the trial court support her request for a remand, and she requested that those documents be filed in this court as a supplemental clerk's record. While the Texas Rules of Appellate Procedure allow an appellate record to be supplemented "if something has been omitted, the supplementation rules cannot be used to create new evidence." *Baylor Scott & White, Hillcrest Med. Ctr. v. Weems*, 575 S.W.3d 357, 366 (Tex. 2019). Here, Contreras's request for the preparation of the supplemental clerk's record, which she

included in the appendix to her brief, shows that the documents in question were filed in the trial court on February 18, 2020 and April 1, 2020—long after the rendition of the trial court's October 22, 2019 order on Corporation's and Services's special appearances. Because the documents Contreras relies on were not before the trial court when it signed the order at issue in this appeal, we may not consider them in our review of that order. *See id.* at 366–67; *see also Roventini v. Ocular Scis., Inc.*, 111 S.W.3d 719, 726 (Tex. App.—Houston [1st Dist.] 2003, no pet.).

## CONCLUSION

We reverse the trial court's order denying the special appearances of appellants FedEx Corporation and FedEx Corporate Services, Inc. We render judgment dismissing the claims raised by appellees Michelle Contreras, Individually and as Representative of the Estate of Christopher Talamantez, II, Deceased; Krystal Saldana as Next Friend of C.M.T., II and J.T., Minors; Victoria Campos as Next Friend of D.C., a Minor; Christopher Talamantez, Sr.; Aurelio Fernando Perez, Individually and as Representative of the Estate of Christian Adam Vasquez, Deceased; and Alexis Sanchez, Individually, as Representative of the Estate of Christian Vasquez, Deceased and as Next Friend of C.V., Jr., a Minor against FedEx Corporation and FedEx Corporate Services, Inc. for lack of personal jurisdiction.

Beth Watkins, Justice