2026 Tex. Bus. 7



THE BUSINESS COURT OF TEXAS
EIGHTH DIVISION

| | | |
|---|---|---|
| AMERICAN AIRLINES, INC., | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Cause No. 25-BC08A-007 |
| | § | |
| JETBLUE AIRWAYS CORPORATION, | § | |
| | § | |
| *Defendant.* | § | |
| | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

¶ 1    Pending before the Court is Defendant JetBlue Airways Corporation ("JetBlue")'s Special Appearance, filed September 29, 2025. Plaintiff American Airlines, Inc. ("American") filed its Response in Opposition to Defendant JetBlue Airways Corporation's Special Appearance [Public Version] on December 8, 2025.[1] JetBlue filed its

---

[1] American contemporaneously filed its Response in Opposition to Defendant JetBlue Airways Corporation's Special Appearance [Under Seal] ("Sealed Resp."). The Court notes both parties filed unopposed motions to seal confidential information; upon a finding of good cause under Texas Rule of Civil Procedure 76a, the Court issued its Sealing Order on January 8, 2026.

Reply in Further Support of Its Special Appearance [Public Version] on December 22, 2025, and filed its Request for Written Opinion on January 12, 2026. The Court held a hearing on JetBlue's Special Appearance on January 12, 2026. Having considered the pleadings, oral and written arguments, relevant evidence, and applicable law, the Court finds American has pleaded sufficient facts to establish personal jurisdiction and finds JetBlue has not met its burden to negate all jurisdictional allegations. JetBlue's Special Appearance must accordingly be **DENIED**.

## I.    BACKGROUND

¶ 2    In 2020, American and JetBlue established the Northeast Alliance ("NEA"), whereby the airlines sought, *inter alia*, to increase services among certain Northeast states and Texas. *See* American's Original Petition ("Pet.") at 1. The NEA's key profit-sharing component was the Mutual Growth Incentive Agreement ("MGIA"), which governed the NEA's revenue proportionate to each airline's annual contribution at NEA airports. *See id.* The federal government eventually enjoined the NEA's operations but permitted the airlines to complete the NEA's prescribed audit process to "settle [the airlines'] obligations to one another with respect to flights flown on or before July 18, 2023." *Id.* at 2. American sued JetBlue for breach of contract to recover amounts allegedly due under the MGIA's reconciliation and payment process.

¶ 3    JetBlue filed its Special Appearance asserting the Court lacks specific jurisdiction. *See* JetBlue's Special Appearance ("Spec. Ap.") at 1, 2. While JetBlue admits it contracted with Texas-resident American, the airline claims its contacts with Texas do

not pass the "purposeful availment" test and claims the instant litigation does not "arise out of or relate to" JetBlue's contacts with Texas. Spec. Ap. at 3, 4. American disagrees. It argues JetBlue, by entering into the NEA, created continuous relationships and obligations with Texas. *See* American's Response to JetBlue's Special Appearance ("Resp.") at 10. American does not contest the NEA covered several states, but avers JetBlue's services to Texas were direct and designed to enhance JetBlue's MGIA profit sharing revenue. *See id.* at 12-13.

## II. APPLICABLE LAW

¶ 4    In a special appearance, both plaintiff and defendant bear shifting burdens of proof. Plaintiff bears the initial burden to plead sufficient allegations to bring the nonresident defendant within reach of Texas' long-arm statute. *Kelly v. Gen. Interior Const., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010). Texas courts look at both plaintiff's petition and special appearance in determining whether plaintiff satisfied its burden. *See* TEX. R. CIV. P. 120(a). If plaintiff so satisfies, the burden shifts to defendant to present sufficient evidence to defeat plaintiff's allegations and negate all bases of personal jurisdiction. *See Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 807 (Tex. 2002).

¶ 5    Texas courts have personal jurisdiction over a nonresident defendant when the state's long-arm statute permits such jurisdiction and the exercise of jurisdiction is consistent with federal and state due-process guarantees. *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 149 (Tex. 2013). The Texas long-arm statute broadly allows courts to exercise personal jurisdiction over a nonresident who is doing "business in this

state." TEX. CIV. PRAC. & REM. CODE ANN. § 17.042(2). The broad "doing business" language in the Texas long-arm statute allows the exercise of personal jurisdiction to "reach[ ] as far as the federal constitutional requirements of due process will permit." *U-Anchor Advert., Inc. v. Burt*, 553 S.W.2d 760, 762 (Tex. 1977). Due process is satisfied when the nonresident defendant has established minimum contacts with the forum state and the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945).

¶ 6    Minimum contacts are sufficient to establish specific jurisdiction over a nonresident defendant when (1) the defendant's contacts with the forum state are purposeful and (2) the litigation arises from or relates to those contacts. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). In conducting a specific jurisdiction analysis, courts focus on the relationship among the defendant, the forum, and the litigation. *See Helicopteros Nacionales de Colom. v. Hall*, 466 U.S. 408, 414 (1984); *Shaffner v. Heitner*, 433 U.S. 186, 204 (1977). The nonresident defendant must take action that is purposefully directed at the forum state. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 577 (Tex. 2007). To determine whether the nonresident defendant purposefully directed action toward Texas, courts examine the nonresident defendant's conduct indicating an intent or purpose to serve the Texas market. *Asahi Metal Indus. Co., Ltd. v. Super. Ct. of Cal.*, 480 U.S. 102, 112 (1987); *Moki Mac*, 221 S.W.3d at 577. Specific jurisdiction is established when the defendant's alleged liability "aris[es] out of or [is] related to" an activity conducted within the forum. *Helicopteros*, 466 U.S. at 414 n.8.

## III.   DISCUSSION

¶ 7     It is undisputed that JetBlue is a nonresident defendant and has no principal place of business in Texas.  *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) ("[T]he paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home.").  Because there are no allegations JetBlue is subject to general personal jurisdiction in Texas, the Court focuses on whether it may exercise specific jurisdiction in Texas.

### A.  Purposeful Availment

¶ 8     JetBlue purposefully sought benefits from Texas.   The first specific jurisdiction prong, purposeful availment is the "touchstone of jurisdictional due process." *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 784 (Tex. 2005). To determine whether a defendant has purposefully availed himself of the benefits of Texas law, the Court considers (1) the defendant's own actions but not the unilateral activity of another party, (2) whether the defendant's actions were purposeful rather than "random, isolated, or fortuitous," and (3) whether the defendant sought "some benefit, advantage, or profit by availing itself of the jurisdiction." *Id.* at 785 (internal quotations omitted).  "The purposeful availment test must focus on the defendant's efforts to avail itself of the forum and not the form of action chosen by the plaintiff." *Moki Mac*, 221 S.W.3d at 576 (internal quotations omitted); *see Michiana*, 168 S.W.3d at 789-90 (for determining personal jurisdiction, "it is 'the defendant's conduct and connection with the forum' that are critical.").

¶ 9     Here, MGIA's profit sharing provision covered "JetBlue flight services to and from Texas, including to and from Dallas-Fort Worth, Austin, and Houston" and JetBlue's expansion into new destinations, including San Antonio. Pet. at 5. JetBlue advertised its relationship with American and its NEA membership, directly targeting Texans. *See* Resp., Ex. 2 at App. 60-61; Ex. 3 at App. 65; Ex. 4 at App. 67-8; Ex. 5 at App. 70. Between January 2022 and July 2023, JetBlue operated thousands of Texas flights and serviced passengers to and from Texas. *See* Sealed Resp., Ex. 7 at App. 96. JetBlue has also continuously employed Texas employees at Texas airports working from Texas property leased by JetBlue. *See* Sealed Resp., Ex. 8 at App. 117, 122.

¶ 10    JetBlue attempts to downplay its Texas availment. It argues the "locus and focus of this dispute . . . [is] about New York and the Northeast," and asserts its Texas contacts amount to a mere 2% of revenue under the MGIA. January 12, 2026, Hearing Transcript ("Tr.") at 53 ("So [personal jurisdiction] is everywhere, it's nowhere in particular, but if it's about anywhere, it's about the four airports in the Northeast."); Spec. Ap. at 4. But in a mega-revenue and profit-sharing agreement like the MGIA, even 2% of all revenue is a substantial profit and the financial benefit derived specifically from its Texas operations must not be negated nor ignored. *See State v. Volkswagen Aktiengesellschaft*, 669 S.W.3d 399, 414 n.51 (Tex. 2023) (citing *Moncrief Oil*, 414 S.W.3d at 152 (minimum contact analysis focuses on contact quality over quality)).

¶ 11    JetBlue also claims its advertisements were not specifically directed at Texas, as evidenced by the airline's nationwide marketing. JetBlue's Reply in Support of Its

Special Appearance ("Reply") at 5-6; *See* Tr. at 15. The airline quips, "American neglects to mention that the press release about JetBlue's new route from the Northeast to San Antonio mirrors similar announcements JetBlue made for each new city to which service began in 2022-23." Reply at 6. Further, that the advertisements "characterized the new destinations as advanc[ing] JetBlue's focus city strategy in New York or Boston." *Id.* (internal quotation omitted) (alteration in original). The Court is not persuaded that advertising in myriad states negates purposeful availment to the forum. JetBlue did advertise new/increased flight paths in other states, but such activity does not undermine the airline's purposeful target of the forum. Nor does servicing other states under the NEA make the airline's contacts with Texas "random, isolated, or fortuitous." *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 774 (1984).

¶ 12    JetBlue also harps on the NEA and the MGIA's New York forum-selection and New York choice of law clauses. Spec. Ap. at 1. Notably, the instant forum-selection clause creates a forum in a New York federal court. *See* Sealed Resp., Ex. 1 at App. 20. Even so, these clauses are not dispositive and must be weighed on balance with JetBlue's other Texas contacts. *See Citrin Holdings, LLC v. Minnis*, 305 S.W.3d 269 (Tex. App.—Houston [14th Dist.] 2009, no pet.). The evidence before the Court provides JetBlue's Texas contacts outweigh enforcing the parties' forum-selection and choice of law clauses. Such evidence—the airline's utilization of Texas-based airports, passengers, services, and personnel—supports JetBlue intended to serve the Texas market and to purposefully avail itself of the benefit of doing business in Texas.

¶ 13    The Court accordingly finds JetBlue purposefully availed itself of the privilege of conducting activities within Texas.

### B. Relatedness

¶ 14    JetBlue's alleged liability arises out of or is related to its activity within Texas. *See* Pet. at 5, 12. The relatedness prong mandates "an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cnty.*, 582 U.S. 255, 262 (2017) (alteration in original) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Said differently, "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.* Notably, a strict causal relationship is not required. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 362 (2021).

¶ 15    American expressly pleaded the substantial connection between JetBlue and this Texas-based litigation. American states the MGIA addressed increased JetBlue flights to and from, *inter alia*, Dallas-Fort Worth, Austin, Houston, and enabled JetBlue to expand services to new destinations like San Antonio. Pet. at 5. American further pleaded:

> The MGIA was also negotiated and operated through innumerable electronic, oral, and written communications initiated into [Texas], for the purpose of entering into and operating a joint contractual venture with a business located in [Texas], for the purpose of expanding both parties' network—including through expanding services to and from Texas and affording greater access to customers traveling to and from Texas.

Pet. at 5. The MGIA's agreed terms also provided JetBlue make "payments due under the MGIA to American, whose principal office is identified by the contract as Fort Worth, Texas." Resp. at 3. American also notes in its Response that JetBlue leases operational space in Texas airports and employs Texans to work in those spaces. *See* Sealed Resp., Ex. B at App. 122; Ex. 8 at 117.

¶ 16    JetBlue argues the underlying litigation is not focused on Texas activities but rather concerns "the change in operations and revenues at those out-of-Texas airports." Spec. Ap. at 5. Averring further, "none of JetBlue's complained-of conduct occurred in Texas, and nothing in the agreements required that JetBlue perform in Texas." *Id.* Indeed, the lawsuit concerns revenue and profits derived from various NEA routes. Nevertheless, JetBlue ignores that American seeks to recover revenue derived in part from JetBlue's new/increased flight paths to Texas, its presence in Texas airports, and its services to Texans. *See* Pet. at 5, 12. It matters not that the Texas routes "make up a small fraction of JetBlue's total business" under the MGIA, nor that JetBlue received revenue under the MGIA from contacts with other states. It is similarly jurisdictionally irrelevant that American's alleged injury occurred in Texas and other states. *Walden v. Fiore*, 571 U.S. 277, 290 (2014). To the extent JetBlue argues it has more connections with other NEA-participating states and it lacks direct causal connection with Texas, the Court rejects this argument as "too exacting." *Luciano v. SprayFoamPolymers.com, LLC,* 625 S.W.3d 1, 18 (Tex. 2021).

¶ 17    The Court accordingly finds the connection between the present litigation, JetBlue, and Texas is sufficiently close to warrant specific jurisdiction.

## C.  Traditional Notions of Fair Play and Substantial Justice

¶ 18    The Court has found JetBlue has sufficient contacts with Texas and next finds personal jurisdiction in Texas comports with traditional notions of fair play and substantial justice.  The Court considers the following factors in making its determination:

> (1) the burden on the defendant, (2) the interests of the forum state in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies.

*See Guardian*, 815 S.W.2d at 231.  The defendant bears the burden to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."  *Burger King*, 471 U.S. at 477.  But "[o]nly in rare cases will the exercise of jurisdiction not comport with fair play and substantial justice when . . . the nonresident defendant has purposefully established minimum contacts with the forum."  *Guardian*, 815 S.W. 2d at 231 citing *Burger King*, 471 U.S. at 477-78.

¶ 19    JetBlue has not sustained its burden.  The airline briefly addresses traditional notions of fair play and substantial justice, primarily arguing American may "clearly obtain relief regarding this New York law contract dispute in a New York court," and arguing "[t]here is no reason to burden a Texas court with a contractual dispute governed by New York law that concerns airline services in New York and Boston."  Spec. Ap. at 7.  These

arguments do not mandate a "rare" departure from finding personal jurisdiction adheres to traditional notions of fair play and substantial justice. *Guardian*, 815 S.W. 2d at 231.

¶ 20   First, whether American may obtain relief in another forum is irrelevant. Next, Texas is not burdened by the instant litigation because it has a strong interest in adjudicating this dispute. As stated above, JetBlue is alleged to have breached the MGIA in Texas against Texas-resident American. Texas has an obvious interest in providing a forum for resolving disputes involving its citizens, particularly where an alleged contract breach occurred, in part, within the state. *See Shapolsky v. Brewton*, 56 S.W.3d 120, 135 (Tex. App.—Houston [14th] 2001, pet. denied). Given the underlying litigation's facts, the exercise of personal jurisdiction over JetBlue comports with traditional notions of fair play and substantial justice.

## IV.   CONCLUSION

¶ 21   American has satisfactorily pleaded, and JetBlue has failed to disprove, the Court has personal jurisdiction over JetBlue. It is therefore **ORDERED** that JetBlue's Special Appearance is **DENIED**.

SO ORDERED.

_____
Judge, Texas Business Court,
Eighth Division

SIGNED: February 19, 2026.